[Crim. No. 5510.   Second Dist., Div. Two.   Apr. 18, 1956.]

THE PEOPLE, Respondent, v. VERNA LOUISE MOORE, Appellant.

Block, Toler, Bulloch & Biggerstaff for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant, having been convicted of bookmaking, appeals from the judgment and an order denying her motion for new trial. Defendant voluntarily and fully confessed the crime to the police after her arrest, and her counsel do not now suggest that she is innocent. The only claim made in support of the appeal is that material evidence was obtained through an unlawful search and seizure and should not have been admitted at the trial.

On January 26, 1955, at about 2:00 p. m., seven sheriff's deputies and one officer of the Compton Police Department, went to a residence at 1816 Ezmirlian Street, in Los Angeles County, where Deputy Caraway, as he testified, looked through the dining room window and saw defendant seated at the dining table. ██ Making such observations through a window does not constitute an unreasonable search and the officers were entitled to act upon the information thus obtained (*People* v. *Martin*, 45 Cal.2d 755, 762-763 [290 P.2d 855]). Though the window had venetian blinds there were apertures through which the officer could observe defendant. She was seated at the table with a telephone beside her, numerous pads and slips of paper in front of her; also a publication that Officer Caraway (who was stipulated to be an expert in bookmaking activities in Los Angeles County) identified to his own satisfaction to be a racing form known as the National Daily Reporter. Although he said on cross-examination that he could not positively identify it as such, he "was pretty sure

it was" a form. ██ Of course, he did not have to be positive or possess evidence competent to prove the fact in court; a well-grounded belief was sufficient to lay the basis for a search without a warrant. (*People* v. *Boyles,* 45 Cal.2d 652, 656, 657 [290 P.2d 535]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Rios,* 46 Cal.2d 297, 298-299 [294 P.2d 39].) ██ In the present instance there was no warrant and the fact, if it be a fact, that the officers had had plenty of time to obtain one did not prevent their making the search if reasonable ground existed therefor. (*People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40].)

The officers identified themselves and demanded entrance; Caraway held his badge up to the window and said, "open the door, Sheriff's Department"; thereupon defendant "gathered up that stuff and ran for the kitchen." Fearing the destruction of evidence four officers entered the front door and four the rear one. They kicked in the front door through which Caraway and three others entered. Caraway ran for the kitchen and on arrival saw that defendant was turning on the water at the sink. The racing form and numerous white slips of paper, which proved to be records of bets on that day's races, were in the garbage disposal unit; Caraway pulled them out with his hand; they were wet; the form was the National Daily Reporter. Caraway then went to the telephone and took bets, ten of them. Two of the slips, records of bets, were preserved and placed in evidence. Some 100 other such slips were found covering races of the same day; also an additional Reporter, several other racing forms and numerous pads of paper; which ensemble the witness characterized as "racing paraphernalia." ██ Defendant was there arrested and the search and seizure apparently preceded the arrest, but that is of small consequence if the search was an incident thereto and the arrest based upon reasonable grounds. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *People* v. *Boyles, supra,* 45 Cal.2d 652, 656; *People* v. *Martin, supra,* 45 Cal.2d 755, 761.)

██ The test is what the officers knew or reasonably believed on the basis of reliable evidence at the time they broke through the door, for the arrest or search cannot be justified by what the search reveals. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].) ██ "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122].) In *People* v.

*Novell,* 54 Cal.App.2d 621, 623 [129 P.2d 453], the concept is thus defined: "The term, reasonable or probable cause, has been defined: 'By "reasonable or probable cause" is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].)

"The term, probable, has been defined as meaning 'having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.' (*Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].) ''

█ Defendant obviously was engaged in some activity involving the telephone; she was using other things which, considered separately, could have legitimate uses but which in combination conveyed to the practiced eye of the expert officer "racing paraphernalia"; there was nothing to indicate that defendant was engaged in any household chore or other innocent activity. In this respect the case is unlike *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10], wherein the officers looking through a window in a door saw pads of paper such as those used by bookmakers, with writing on the pads. It was held that as those things were reasonably convenient to the conduct of defendant's legitimate business they were insufficient to give rise to reasonable ground for an arrest. When the officers in the instant case identified themselves and demanded admittance defendant "gathered up that stuff and ran for the kitchen," thus placing a sinister meaning upon the various items and suggesting to the officers the probability of immediate destruction of evidence. Reasonable men in these circumstances would conclude that a crime was then being committed and that there was urgent need of rescuing the evidence. There being no conflict in the testimony the question was one of law (*People* v. *Brite, supra,* 9 Cal.2d 666, 687), which the trial judge correctly decided. The officers had reasonable ground for making an arrest and were entitled in the circumstances to force an entrance.

The right to break down barriers in order to make an immediate arrest and to save evidence from destruction was recognized in similar circumstances in *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]. (See also *People* v. *Martin, supra,* 45 Cal.2d 755, 762-763; *People* v. *Martin,* 46 Cal.2d 106, 107-108 [293 P.2d 52].)

█ The same case, *People* v. *Maddox, supra,* disposes of appellant's contention at bar that a violation of section 844,

Penal Code* makes the arrest unlawful; it holds "that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." (Pp. 306-307.)

There was a valid arrest in the instant case and a reasonable search and seizure. This conclusion renders unnecessary a discussion of certain contentions advanced by respondent in support of the ruling below.

Judgment and order denying new trial affirmed.

Moore, P. J., and Fox, J., concurred.

---

*Pen. Code, § 844. "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."