[Crim. No. 3200.   First Dist., Div. One.   Sept. 4, 1956.]

THE PEOPLE, Appellant, v. MIGUEL SOTO, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Arlo E. Smith, Deputy Attorney General, and J. F. Coakley, District Attorney (Alameda), for Appellant.

George Nye, Public Defender, and Enid Weseman, Assistant Public Defender, for Respondent.

PETERS, P. J.—Defendant was charged with unlawful possession of heroin, and with a prior conviction of the same offense. After being held to answer, defendant moved, under section 995 of the Penal Code, to dismiss the information. The trial court, on the ground that the sole evidence against defendant had been secured illegally, and was, therefore, inadmissible, dismissed the information. The People appeal.

The first question presented is whether or not the superior court properly may pass upon the admissibility of evidence allegedly the product of an unlawful search or seizure in a proceeding under section 995. In a proper case, the superior court may do so. The scope of review under that section is to determine whether the magistrate has held the defendant to answer without reasonable or probable cause.

When the only evidence produced against the defendant is incompetent and inadmissible, then there exists no reasonable or probable cause to hold him to answer. The competency of the evidence in such a situation is, therefore, reviewable on a motion made under section 995. (*Rogers* v. *Superior Court*, 46 Cal.2d 3 [291 P.2d 929]; *Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23].) But, on such a motion, the trial court has no power to pass on conflicts in the evidence.

As was stated in *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]: "Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility

can be made at the trial on the basis of all of the evidence bearing on the issue."

In the instant case, the only evidence before the trial court on the motion under section 995 of the Penal Code was the transcript of the preliminary hearing. At that hearing the only witness called was Officer Hilliard of the Oakland Police Department. It is our duty to ascertain whether his evidence discloses, without conflict, that the arrest and search of defendant were illegal.

Hilliard testified that about 8:30 a. m. on July 22, 1955, he was informed that another officer had received an anonymous telephone call to the effect that a narcotics party was going on in Room 37 of the Baldwin Hotel; that pursuant to that information he and another officer proceeded to the Baldwin Hotel; that the room clerk there informed him that the registered occupant of Room 37 was one Alphonso Garcia, also known as "Wimpy"; that such a person was known to him as a narcotics user; that he then proceeded to Room 36, which adjoins Room 37, and interviewed the occupant; that this occupant stated that "for the past two weeks that a steady stream of people going in and out of Room 37 had bothered him, in fact at night had kept him awake most of the night," and that "there were peculiar sniffing noises coming from the room and he had heard conversation relating to narcotics and stuff"; that while he was talking to the occupant of Room 36 he saw a man by the name of Charles Shuck, a known narcotics user, come out of Room 37; that he asked Shuck what he was doing in that room and Shuck stated that he had gone to the room to use narcotics and had used heroin while in the room; that he asked Shuck if there were any more narcotics in the room; that Shuck replied that there were but that he did not know exactly where; that while he was talking to Shuck two other men approached Room 37; that he recognized one of the men as a known narcotics user by the name of Romero, also known as "Snake"; that he asked the men where they were going, and Romero stated that they were going to Room 37 to see "Wimpy"; that he and Romero then approached Room 37 and he knocked on the door; that a voice from inside asked who was there; that he replied "Me and Snake"; that the door was then opened by defendant Soto; that until that moment he did not know that Soto was in the room; that he proceeded into the room and notified Soto that he was under arrest; that he noticed "Wimpy" asleep in the bed and he awoke "Wimpy"; that

while he was doing this, Soto started to put on his shoes; that he seized the shoes and found a hypodermic needle and eye dropper in one shoe and two packets of heroin in the other. Admittedly, the officers did not have a search warrant or a warrant of arrest.

The defendant Soto was taken to the police department where he admitted that the heroin and needle belonged to him. At that time he stated that he had brought these articles to "Wimpy's" room the night preceding the arrest and had spent the night with "Wimpy." These admissions on this motion, must be disregarded. (*Hall* v. *Superior Court,* 120 Cal.App.2d 844 [262 P.2d 351]; *People* v. *Schuber,* 71 Cal.App.2d 773 [163 P.2d 498].)

Under this evidence, for the purpose of a motion under section 995 of the Penal Code, were the search and seizure illegal? That is the question.

The parties first argue as to whether the arrest in the instant case was or was not a lawful one. That is not the decisive question involved. A search may be unlawful although the arrest is legal. (*People* v. *Brown,* 45 Cal. 2d 640 [290 P.2d 528].) The real criterion as to the reasonableness of a search is whether or not there has been the commission of a public offense in the presence of a police officer, or whether, under the facts, the police officer has reasonable grounds to believe that the defendant may have committed a felony. (See *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40]; *People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39]; *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114 [298 P.2d 57]; *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13]; *People* v. *Johnson,* 139 Cal.App. 2d 663 [294 P.2d 189]; *People* v. *Villarico,* 140 Cal.App.2d 233 [295 P.2d 76]; *People* v. *Martin,* 140 Cal.App.2d 387 [295 P.2d 33]; *People* v. *Moore,* 140 Cal.App.2d 870 [295 P.2d 969]; *People* v. *Rodriguez,* 140 Cal.App.2d 865 [296 P.2d 38]; *People* v. *Moore,* 141 Cal.App.2d 87 [296 P.2d 91]; *People* v. *Lujan,* 141 Cal.App.2d 143 [296 P.2d 93]; *People* v. *Smith,* 141 Cal.App.2d 399 [296 P.2d 913]; *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Dixon,* 46 Cal.2d 456 [296 P.2d 557].)

Reasonable or probable cause has been discussed in many cases. Generally speaking, it means "such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*People* v. *Smith,* 141

Cal.App.2d 399, 402 [296 P.2d 913]; see also *People* v. *Villarico*, 140 Cal.App.2d 233 [295 P.2d 76]; *People* v. *Rodriguez*, 140 Cal.App.2d 865 [296 P.2d 38]; *People* v. *Moore*, 141 Cal.App.2d 87 [296 P.2d 91]; *People* v. *Moore*, 140 Cal.App.2d 870 [295 P.2d 969].)

In the instant case Officer Hilliard knew that the police had received an anonymous tip that a narcotics party was being held in Room 37 of the Baldwin Hotel. He discovered that Garcia was the registered occupant of that room. Then he learned from the occupant of an adjoining room that there was a steady stream of people going into Room 37, and that ''sniffing'' noises and conversation about narcotics came from the room. Then he learned from Shuck, a known user, that he had just used narcotics in that room, and that there were more narcotics in the room. He then recognized Romero, a known user, going to the room. Under these circumstances, if Garcia, the registered occupant of the room, was the person here involved, the arrest and search would clearly have been lawful, and respondent does not argue to the contrary. The law on this issue is clear. ▮ While an anonymous tip, of itself, cannot alone constitute reasonable grounds for a belief that a person is guilty of the commission of a felony (*People* v. *Thymiakas*, 140 Cal.App.2d 940 [296 P.2d 4]), it is a factor to be considered. ▮ The police, in a proper case, may act on information received from others if the source is reliable. (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535].) When this factor is considered with the other information then known to Officer Hilliard it would appear that he had reasonable grounds to believe that a felony had been committed in that room. In *People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6], the officers had defendant's resident under surveillance for about a month. They observed known narcotics users frequenting the premises. They were told by two visitors to the premises that they had just received a shot of heroin there. A search, based upon a forcible entry, was held to be lawful. A similar result was reached in *People* v. *Sayles*, 140 Cal.App.2d 657 [295 P.2d 579]. There the police, knowing defendant was an addict, placed his home under surveillance. A paid informer told the police that defendant had narcotics in his home and had sold some to the informer. It was held that a search based on a forcible entry was legal because the officers had reasonable grounds to believe that defendant had committed a felony. (See also

*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 6], and *People* v. *Villarico*, 140 Cal.App.2d 233 [295 P.2d 76].)

As already pointed out, if Garcia were the defendant in the instant case, the search would clearly have been a legal one. But he is not. Soto, a man the police officer, until his entry, did not know was in the room, is the defendant. Does that make any difference?. Did the police have reasonable grounds to believe that Soto had committed a felony?

■■■ There can be no doubt that under some circumstances the fact that the police have the reasonable and probable belief that the known occupant of a room or house has committed a felony will not justify the search or arrest of a casual visitor to that room or house. (*People* v. *Kitchens*, 46 Cal.2d 260 [294 P.2d 17]; *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Schraier*, 141 Cal.App.2d 600 [297 P.2d 81].) But the rule is not absolute. Each case must turn on its own facts. The test is whether the police had reasonable cause for believing that the person arrested, whoever he may be, has committed a felony.

■■■ In the instant case, for reasons already stated, the police officers had reasonable grounds to believe that the person or persons in Room 37 were in possession of narcotics. He had reasonable grounds to believe that the occupant or occupants of that room were committing a felony. The police officer thought that Garcia, the registered occupant of the room and who was known to the officer, was the culprit. But when the defendant Soto opened the door to the room, and the officer saw him in his bare feet, with Garcia asleep in the bed, he could reasonably conclude that Soto was not a mere innocent bystander or casual visitor. The officer had learned from Shuck that Shuck had just used narcotics in the room and that more narcotics were still there. The officer could reasonably conclude that Soto, the man who answered the door, had been in the room while Shuck had used the narcotics, and had furnished them to him. Accordingly, there existed "such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*People* v. *Smith*, 141 Cal.App.2d 399, 402 [296 P.2d 913].)

The respondent, in contending that reasonable grounds did not exist for his arrest and search, relies on several federal cases. (*Johnson* v. *United States*, 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436]; *United States* v. *Di Re*, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210]; *Hernandez* v. *United States*, 17 F.2d

373.) None of these cases involved facts such as ours. In the Johnson case the federal officers had been informed that unknown persons were smoking opium in a certain hotel. The officers could smell opium when they approached the suspected room. They arrested the occupants and a search disclosed opium. By a 5 to 4 decision the majority held the search to be illegal. The case is an argumentative authority in support of respondent, but we do not think the rule there adopted should be followed in this state. ▉▉▉ Inasmuch as the Supreme Court of this state has held that the rules applicable to illegal searches are not based on due process, but are mere rules of evidence (*People* v. *Cahan*, 44 Cal.2d 434, 442 [282 P.2d 905]) we are not bound by the decisions of the United States Supreme Court on the subject. ▉▉▉ As was said in the Cahan case at page 450: ''In developing a rule of evidence applicable in the state courts, this court is not bound by the decisions that have applied the federal rule, and if it appears that those decisions have developed needless refinements and distinctions, this court need not follow them.''

The California Supreme Court in *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852], has refused to follow the Johnson case in certain particulars. In *People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118], the other division of this court refused to follow the Johnson case in a factual situation where the basis of the suspicion for the arrest and search was much weaker than in the Johnson case. In the Chew case, Mr. Justice Dooling, speaking for the court, after referring to the facts and law of the Johnson case, stated (142 Cal.App.2d at p. 403): ''With all due respect to the justices of that court [the United States Supreme Court] who joined in this holding, we cannot follow their reasoning and agree rather with the four justices who dissented.'' The Supreme Court of California has denied a hearing in the Chew case.

In the Di Re case an informer pointed out a particular individual as the possessor of counterfeit gasoline ration stamps. When this person was arrested, sitting beside him in the automobile was Di Re. Di Re was searched and counterfeit stamps were found on his person. The Supreme Court of the United States held that the arrest and search were not based on probable cause and were illegal. The mere presence of Di Re in the automobile was not, of itself, sufficient to create probable cause. Factually, the case differs from ours in that in the Di Re case the informer had definitely identified

another individual as the sole and actual perpetrator of the crime. That is not so in the instant case. Here the reasonable suspicion was that the occupant or occupants of Room 37, whoever they might be, had committed the crime. This serves to distinguish the case. But, if the Di Re case stands for a rule contrary to the one stated in this opinion we do not think it is a sound rule, and we believe that it should not be followed.

In the Hernandez case (17 F.2d 373) the narcotic agents had a house under surveillance. They saw the defendant come from the house accompanied by a known narcotics peddler. The two acted in a suspicious manner. Upon an arrest and search without a warrant, morphine was found in defendant's possession. The court held that there was no reasonable grounds for the search. The case is of little help in solving the instant one, differing as it does so materially on the facts.

For the foregoing reasons the order appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.