[Crim. No. 6816. Second Dist., Div. Two. Jan. 25, 1960.]

THE PEOPLE, Respondent, v. MARY STEFFANO, Appellant.

Joseph T. Forno for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of violating Penal Code section 337a, subdivision 1, bookmaking; subdivision 2, unlawfully occupying a residence with paraphernalia for the purpose of recording bets; and subdivision 4, unlawfully recording a bet. She has appealed from the judgment and sentence.

Some time prior to January 6, 1959, Officers Lopez and Tucker, of the Los Angeles Police Department, investigated an official vice complaint concerning 4105 Montclair Street, which was one unit of a triplex. They determined that no bookmaking activities were being carried on there. While they had 4105 under observation, Officer Lopez, on several occasions, saw unidentified men entering 4109 Montclair (another unit of the same building), remain a short time, and then leave. The latter address was under observation approximately half a dozen times over a period of about two weeks.

At approximately 3:20 in the afternoon of January 6, 1959, the officers went to the rear of 4109 Montclair. Officer Lopez noticed that all the blinds were drawn; one, however, did not completely cover a window, so that it was possible to see into the house. He observed defendant through this window. The rear door had glass panels covered by a drawn shade, which was quite worn and frayed in places so that it did not completely cover the glass panels. Officer Tucker observed defendant through the glass panel on the left side of the door as he was facing it. Defendant was seated at a table in the kitchen with her back to the officers. They observed a telephone, a copy of the National Daily Reporter scratch sheet, and several other papers on the table. Lopez heard the telephone ring and observed defendant answer it, but he could not hear the conversation. Defendant, however, appeared to be listening and also appeared to make notations on the National Daily Reporter. Tucker went around to the front and knocked on the door, while Lopez remained at the back and continued to observe the defendant. A few seconds after Tucker went around to the front, Lopez observed defendant leave the kitchen and go into another room. Tucker saw the blind on the front door being pulled aside a few seconds after he had knocked. He identified himself as a police officer to defendant, and displayed his badge. The blind then closed. Officer Lopez, who was still at the rear, observed defendant return to the kitchen immediately, pick up some papers on the table where she had been sitting, and place them underneath the kitchen stove. She then left the kitchen again. About a minute and a half later, defendant returned to the front and opened the door. Officer Tucker told defendant that he had received a complaint for bookmaking and would like to come in and talk to her about it. Defendant said, "All right; come on in." Officer Tucker thereupon entered the house. He then went into the kitchen, where the saw the telephone and a daily newspaper on the table. He opened the rear door and Officer Lopez entered. Lopez went over to the stove where he recovered the National Daily Reporter, dated that day, and other papers which were under the stove, among which was a white piece of paper with several notations on it. These notations were compared with the issue of the National Daily Reporter, which he had retrieved. It was his expert opinion that these notations indicated that wagers had been placed on various horses running at different race tracks throughout the United States. It was after the scratch sheet and other papers were found

under the stove that Officer Tucker arrested the defendant. She admitted that the notations were in her handwriting but denied that she was engaged in bookmaking activities. While the officers and defendant were in the kitchen the telephone rang. The call was taken by Officer Tucker. The caller identified himself as ''Joe,'' who sought to place bets on horses running in the 7th and 8th races at Santa Anita track on that afternoon. A bill from the telephone company, bearing the name ''Mary Steffano'' and the address 4109 Montclair Street, was found in the kitchen. Neither of the officers had search warrants for these premises, nor did they have any warrant for defendant's arrest.

In seeking a reversal, defendant contends that the court erred in admitting into evidence the telephone bill, and issue of the National Daily Reporter of January 6th, and the white piece of paper on which the notations were found. Her position is that there was no reasonable or probable cause for the search; that it was therefore illegal, and, as a consequence, these documents were erroneously received in evidence. We find no merit in defendant's contentions.

 Reasonable or probable cause is shown when a man of ordinary care and prudence, knowing what the officer knows, would be led to believe or conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250] ; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] ; *People* v. *Carnes,* 173 Cal.App.2d 559, 565 [343 P.2d 626].) Such cause may exist even though there may be some room for doubt. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344].)

 Making observations through a window does not constitute an illegal search, and the officers were entitled to act upon the information thus obtained. (*People* v. *Martin,* 45 Cal.2d 755, 762-763 [290 P.2d 855] ; *People* v. *Moore,* 140 Cal. App.2d 870, 871 [295 P.2d 969] ; *People* v. *Hen Chin,* 145 Cal. App.2d 583, 586 [303 P.2d 18].) The items the officers observed on the kitchen table suggested racing paraphernalia. During the course of what appeared to be a telephone conversation, the defendant was observed apparently making notations on the National Daily Reporter. Although defendant responded to Officer Tucker's knock at the front door, she only pulled back the curtain sufficiently to enable the officer to see her. He exhibited his badge and requested an interview. She, nevertheless, did not immediately open the door but instead

returned to the kitchen, where Officer Lopez observed her place under the stove most of the papers that had been on the table. It was only after this interval that defendant opened the front door. Her behavior, both with respect to her failure immediately to open the front door in response to Officer Tucker's request to talk to her, and her furtive acts in removing the tell-tale items from the kitchen table and attempting to hide them, were not without significance. The foregoing facts and circumstances were sufficient to lead a man of ordinary care and prudence to believe and conscientiously entertain a strong suspicion that defendant was engaged in bookmaking activities. Thus the requirements of reasonable or probable cause were adequately satisfied. The search was therefore legal and the evidence seized was properly admissible. The case is in many respects factually similar to *People* v. *Moore, supra.* In that case the officers observed the defendant through a window. She was observed there, as here, sitting at a table with a telephone beside her, with numerous pads and slips of paper and a copy of the National Daily Reporter in front of her. After observing the defendant through the window, the officers went to the door and demanded entrance. Defendant did not open the door; instead she picked up all the papers and ran into the kitchen. The officers then broke into the house and seized the papers. One of the officers there, as here, took some bets over the telephone. Defendant was then arrested. This court held that the officers were entitled to act upon the information they had thus obtained, and that the search and seizure were reasonable and proper and that the evidence thus recovered was admissible.

 Furthermore, in the instant case, the defendant consented to the entrance of the officers. In this connection, Officer Tucker testified: ''I advised the defendant at this time that I had a complaint for bookmaking, and I told her I would like to come in and talk to her.

''Q. By Mr. Gustafson: What did she say? A. She said, 'All right. Come on in.' ''

The consent to enter appears to have been voluntary. At the conclusion of the trial the judge commented that ''. . . there was consent to enter. . . .'' The case of *People* v. *Smyre,* 164 Cal.App.2d 218 [330 P.2d 489], is here apposite. At page 224 the court stated: ''After they [the officers] knocked on the door and stated their purpose, Mary Frazer opened the door a few inches. Upon seeing the officers, she opened the door further, stepped back and sat down on the bed. Under

these circumstances she clearly consented to the entry of the officers. She was the person with proper authority to give consent. There is nothing in the record to indicate that her consent was anything but voluntary. The question of her consent was a question of fact properly left to the trial court. Her expression of assent to the officers and her action in opening the door suggests an affirmative invitation to the officers to enter." The entry of the officers in the instant case was therefore not unlawful. (See *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241].)

In light of the observations of Officer Lopez, that defendant removed certain papers from the kitchen table and placed them under the stove after Officer Tucker knocked at the front door but before she admitted him, it was not unreasonable for Lopez to retrieve the papers and examine them. Also, in light of what he had observed of defendant's operations, it was perfectly reasonable for him to answer the telephone when it rang and to make notes of the incoming bets. In view of these circumstances, defendant has no justifiable basis for claiming that her constitutional rights were invaded by any illegal search or seizure.

The defendant has appealed from the judgment and the sentence. These are one and the same. (*People* v. *Perkins,* 147 Cal.App.2d 793, 797-798 [305 P.2d 932] ; *People* v. *Smith,* 164 Cal.App.2d 510, 513-514 [330 P.2d 678].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied February 9, 1960.