[Crim. No. 7596. Second Dist., Div. Two. Nov. 15, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE R. RAYSON, Defendant and Appellant.

Joseph T. Forno for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J. — Defendant was convicted of violating Penal Code section 337a, subdivision 1, bookmaking, and appeals from the judgment and order denying a new trial.

The sole contention upon appeal is that the physical objects (Exhibits 1 through 6),[1] received in evidence over the objections of appellant, were inadmissible because obtained through unlawful search and seizure.

The only testimony in the case consists of that of Police Officer Lietz contained in the transcript of the preliminary hearing, upon which the cause was submitted in the trial court pursuant to stipulation of the parties. It establishes these facts. Prior to going to 7925 South Central Avenue in Los Angeles on July 22, 1960, Lietz had received an anonymous telephone call—"a male voice stating that there was a male Negro at this location. He was about 40 years old, about 5 foot 8 to 9, about 140 pounds; that he was making book in the center room of this location. That if you walked into this location, it was or rather it appeared to be a shine parlor. If you walked further into this location you came to a center room and that was where bookmaking activity took place. If you walked further there was a game room or a gambling room." At this time Lietz knew of this address "as a place where bookmaking and gambling had been conducted in the past" and had made two prior arrests there.

At about 11:15 on said date, Officer Lietz went to said location and stationed himself across the street and for about thirty minutes observed the activities in front of 7925 South Central Avenue; with binoculars he could see inside the building. He saw "numerous male and female loiterers on the sidewalk in front of the location. They would go inside the place, pass the shine stand, proceed to the center room and would stay there for a few minutes. They would then return and leave the location without getting a shine." Some of the people appeared to have National Daily Reporters in their hands. After crossing the street, Officer Lietz observed through

---

[1]This evidence consisted of a betting marker, a piece of formica with writing on it, copies of the National Daily Reporter, a pencil, and an eraser.

the plate glass window people loitering in the front room and then entering the center portion, and through "a cut-out portion in the wall that divides the front and center room" he could see these people walk up to defendant. "They would hand him what appeared to be U.S. Currency and he would write down some notes in front of him on a piece of paper after speaking to the party." Officer Lietz then entered the shine parlor through the front door, preceded by Officer Hopkins. The officers had neither a search warrant nor a warrant for defendant's arrest.

Officer Lietz walked over to the opening in the center of the partition between the shine parlor and the middle room. The opening was about one by two feet in size and had no glass in it. Through this opening he saw defendant directly in front of him, about a foot away. On the windowsill, in front of defendant, he saw what he recognized[2] to be betting markers and a piece of formica, both of which "are used to record wagers on the horses by the bettors." As Lietz approached the window, defendant was talking on the telephone and making notations on one of the betting markers. He had National Daily Reporters and money in his hands. On a counter in the area where defendant was writing was a National Daily Reporter. Sitting around the room were seven other male Negroes consulting the National Daily Reporter.

At the time Lietz approached the window, Officer Hopkins went to a door at the north side of said partition and, as Lietz was making the above observations, his partner Hopkins was entering the center room. At that time Lietz also observed an eraser in defendant's hand with which he was attempting to erase something on the betting marker. He saw Officer Hopkins show his badge and say "Police officers. You are under arrest for bookmaking," at which time defendant dropped his pencil.

Officer Lietz identified the use of People's Exhibits 1 through 6 in bookmaking. Defendant made admissions to the effect that he had been making book there about two months and that his handwriting was on two betting markers. His handwriting was identified by an expert in handwriting comparison as that on one of the betting markers.

Appellant concedes that "if Officer Lietz had looked through

[2]It was stipulated that Officer Lietz was an expert on the manner, means, paraphernalia, symbols, letters and other signs commonly used in bookmaking in Los Angeles County.

the window, saw what he did, and then proceeded to enter the other room, he might have had probable cause for the search; however, this was not done.'' Based upon the following testimony, it is claimed that Officer Hopkins, without any communication from Officer Lietz, had entered the center room without probable cause and had already started the illegal search when Lietz stopped at the window to observe: ''Who entered the front portion first, you or your partner? A. [LIETZ] : My partner. Q. Your partner. He was ahead of you then, right? A. Yes. Q. And your partner went right on back and entered the center portion through this doorway, is that correct? A. He did. Q. And you stopped and looked through the window? A. I did. . . . Q. Now, you say you stopped at the window and your partner went on through to the center portion, then after that your partner placed the defendant under arrest, and not you, is that correct? A. He did. Q. And it was while your partner was in the center portion in the process of making the arrest that you looked through this window and saw this piece of paper, is that correct? A. No, it is not entirely. Q. Well, weren't you standing there at the window when you saw the piece of paper? A. I was. Q. And your partner was already in the back room, wasn't he? A. He was entering the back room.''

There is no merit to appellant's contention. Not only was there probable cause for the arrest of appellant, justifying a search and seizure as an incident to that arrest, but there was in fact no search.

 ''Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.'' (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].)

 Information provided by an anonymous informer is relevant on the issue of reasonable cause, but in the absence of some pressing emergency an arrest may not be based solely on such information. Additional evidence must be introduced that would justify the conclusion that reliance on the information was reasonable. Such evidence may be supplied by the personal observations of the police. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36].)

██ The observations of Officer Lietz—the presence of the shine parlor at the address given; the layout of the premises; the people entering the center room by way of the shine parlor and leaving with no pretense of getting a shine; the defendant receiving from these persons what appeared to be money and making notes on a piece of paper after speaking to them—coupled with the officer's prior knowledge concerning this address (*cf. People* v. *Taylor,* 174 Cal.App.2d 448, 451 [344 P.2d 837]), were sufficient to justify reliance on the information received from the informant. There was probable cause to believe that bookmaking, a felony, was being conducted in the premises before the officers entered the building, justifying entry and arrest (Pen. Code, § 836) of the person seen engaged in such activity and a search without a warrant. (See *People* v. *Steinberg,* 148 Cal.App.2d 855, 859 [307 P.2d 634]; *People* v. *Easley,* 148 Cal.App.2d 565, 568 [307 P.2d 10]; *People* v. *Hudak,* 149 Cal.App.2d 88, 92 [307 P.2d 942]; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 295.)

True, Officer Hopkins did not testify. However, the two officers were working closely together. Officer Lietz spoke of his "partner" and it is common knowledge that officers of the vice detail usually travel in pairs. It is reasonable to assume that the two officers arrived at the location together. They entered the shine parlor together, Hopkins preceding Lietz. As Lietz paused at the window to observe the inside of the center room, his partner proceeded to enter said room and make the arrest in full view of Officer Lietz who was only a foot away at the open window. Lietz entered the center room and it was he who then talked to defendant and to whom the admission was made. Lietz answered some fifteen incoming calls on the telephone in the space of 10 to 15 minutes but in each case the calling party hung up. In these circumstances so long as one of the arresting party has the requisite information there was reasonable cause to justify arrest and it is immaterial which officer makes the formal arrest. (*Cf. People* v. *Bates,* 163 Cal.App.2d 847, 852 [330 P.2d 102].)

The uncontradicted testimony of Officer Lietz shows that bookmaking activities were being openly conducted at this address—they could be observed from the street through the plate glass window of the shine parlor, and could be seen through the opening in the partition by any member of the public from within the shine parlor. It is a reasonable inference that the situation and the objects in open view and

observed by Officer Lietz were also apparent to Officer Hopkins. ██ ██ "This court is bound to accept all evidence and all reasonable inferences therefrom supportive of the trial court's finding of reasonable cause [citations]; and the weight to be accorded the information upon which the officers acted in making the arrest was essentially for the trial court's determination in the exercise of its sound discretion. [Citations.]" (*People* v. *Fisher*, 184 Cal.App.2d 308, 312 [7 Cal. Rptr. 461].) See also *People* v. *Jackson*, 183 Cal.App.2d 562, 570 [6 Cal.Rptr. 884]; *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]. ██ "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case." (*People* v. *Ingle, supra*, 53 Cal.2d 407, 412.) In the present instance these officers, working together, were not only justified but were under a duty to make the arrest and seize evidence related to the crime.

██ As above stated there was in fact no search. The officers had a right to enter the shine parlor as a public place without a search warrant. (*People* v. *Roberts*, 182 Cal.App.2d 431, 437 [6 Cal.Rptr. 161].) ██ "Mere presence on the land of another does not bar reliance and action on what is seen from such a vantage point. [Citations.] ██ A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way; the mere looking at that which is open to view is not a search. (*People* v. *Spicer*, 163 Cal.App.2d 678, 683 [329 P.2d 917].) Neither looking through the vent nor looking through the window constituted an unreasonable search." (*People* v. *Hurst*, 183 Cal.App.2d 379, 386 [6 Cal.Rptr. 483].) (See also *People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *White*, 180 Cal.App.2d 99, 102 [4 Cal.Rptr. 261]; *People* v. *Moore*, 140 Cal.App.2d 870, 871 [295 P.2d 969]; *People* v. *Steffano*, 177 Cal.App.2d 414, 417 [2 Cal.Rptr. 176]; *People* v. *Bly*, 191 Cal.App.2d 352, 356 [12 Cal.Rptr. 542].)

Thus there is no need for justification of the "search," only the seizure, which was proper as an incident to a lawful arrest.

The judgment and the order denying a motion for a new trial are and each is affirmed.

Fox, P. J., and Herndon, J., concurred.