[Crim. No. 8469.   Second Dist., Div. Four.   Mar. 28, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. BOYCE MOSCO, Defendant and Appellant.

Russell E. Parsons and Edward I. Gritz for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and N. Gregory Taylor, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—By information defendant was charged with possession of marijuana in violation of Health and Safety Code, section 11530. Defendant entered a plea of not guilty. Defendant personally and all counsel waived trial by jury and defendant was found guilty as charged. A motion for new trial was made and denied. Proceedings were suspended and defendant was granted probation for five years.

The sole contention of defendant on appeal is that the evidence used against him was obtained by an illegal search and seizure.

Donald Foreman, a Los Angeles County Deputy Sheriff testified that on December 8, 1961, at approximately 11:55 p.m. he and his partner Deputy William Burns, Jr., were on patrol in a marked radio car; they observed an automobile illegally parked. (Deputy Foreman explained that the term "illegally parked" in this case means that the car was parked more than 18 inches from the curb.) He pulled up alongside the automobile and asked defendant, who was sitting alone behind the wheel, what he was doing. Defendant replied, "Nothing." Deputy Foreman then parked the patrol car and both deputies alighted and approached the parked automobile. Deputy Burns went to the driver's side and asked defendant for his operator's license. At this time, defendant leaned forward and reached under the front seat.

Deputy Foreman, who had taken up a position at the right rear door, played the beam of his flashlight beneath the rear of the front seat in an attempt to see what the defendant was reaching for. Protruding from under the floor mat on the right rear floorboard, he observed what appeared to him to be a brown paper-wrapped cigarette. It had the appearance of a marijuana cigarette. He then opened the rear door, examined the cigarette and observed what appeared on the end of the cigarette to be a seed. Deputy Burns also examined it and showed it to the defendant, asking him what it was and defendant stated that it looked like a marijuana cigarette.

Defendant was then placed under arrest and searched. Deputy Burns located tobacco debris which had the appearance of marijuana debris, in the pocket of a coat defendant was wearing. Deputy Foreman asked defendant if the vehicle belonged to him and defendant replied that it did. He was also asked if he had loaned it to anyone and defendant stated he had but would rather not say to whom. At the time of defendant's arrest, the deputies did not have a warrant for his arrest, or a warrant authorizing them to search his person or automobile.

It was stipulated at the time of trial that Martin Klein was an expert chemist and that his testimony given at the preliminary hearing could be read into the record. He testified he examined the cigarette taken from defendant's car and the crushed debris removed from his coat and found they contained marijuana.

Defendant testified in his own behalf, denying any knowledge of the marijuana cigarette and stating that he had loaned his automobile to a Marvin White just prior to his arrest. He admitted he was wearing the coat, found to contain the marijuana debris, on the night he was arrested, but stated it was only the second time he had worn it, having acquired it five or six months before in a trade with a friend by the name of Melvin Allen. Additional testimony on defendant's behalf was given by Melvin Allen, Barbara Brown and defendant's father. Melvin Allen stated he had given the coat to defendant. Defendant's father testified he had only seen defendant wearing it on one or two occasions prior to December 8, 1961. Barbara Brown testified she was with defendant from 9 to 10:30 p.m. on December 8, 1961; that shortly after 9 p.m. she saw defendant loan his car to Marvin White

but that she had left the defendant and gone home before White returned the car.

Defendant contends that the deputies' action in searching his automobile violated the Fourth and Fifth Amendments of the United States Constitution, article 1, section 19 of the California Constitution; that it amounted to a denial of due process as guaranteed by the Fourteenth Amendment of the United States Constitution and that the evidence obtained thereby should have been excluded under the rule laid down by *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R. 2d 513]. ▮▮▮ It is conceded that if at the time the officers made the search there was reasonable or probable cause for them to do so, the search and subsequent arrest of defendant and seizure of the evidence were not in violation of any of defendant's rights.

"Reasonable or probable cause is shown when a man of ordinary care and prudence, knowing what the officers knew and seeing what they did, would be led to believe or consciously entertain a strong suspicion of the guilt of the accused. [Citations.]" (*People* v. *McCottry,* 205 Cal.App.2d 698, 702 [23 Cal.Rptr. 309]; *People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]; *People* v. *Steffano,* 177 Cal.App.2d 414, 417 [2 Cal.Rptr. 176].)

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (*Brinegar* v. *United States,* 338 U.S. 160, 175-176 [60 S.Ct. 1302, 93 L.Ed. 1879].)

▮▮▮ The question of whether an officer has a right to interrogate the occupant of a vehicle is a separate issue from whether he has the right to search and arrest the occupant. (*People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235]; *People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433].)

"The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties. [Citations.]" (*People* v. *Ellsworth, supra,* 190 Cal.App.2d 844, 846.)

The reasons required to permit an officer to properly engage in questioning are necessarily much less than would be re-

quired to permit arrest and search. (*People* v. *Davis,* 188 Cal.App.2d 718, 722 [10 Cal.Rptr. 610].)

Under the circumstances of the case at bar, we hold that the officers acted in a reasonable manner when upon observing a person sitting alone in an illegally parked vehicle late at night on a side street they stopped to question the occupant.

Defendant points out that it was 11:55 p.m. and that the car was parked within approximately 100 feet from a well-lighted, busy intersection. These circumstances, while not without a bearing upon the issue of reasonableness of the officers' actions do not render their stopping to question defendant illegal.

A major issue presented is at what point in time the search actually began. Defendant contends that Deputy Foreman started the search at the time when the beam of his flashlight was first directed into the car and before he had any awareness of the cigarette. In *People* v. *McClain,* 209 Cal. App.2d 224, 227 [26 Cal.Rptr. 244], officers stopped an automobile being driven erratically, directed the light from a flashlight into it, and observed a plastic container filled with a substance resembling narcotics which occupant admitted was marijuana. The court held that the officers' action in shining the flashlight inside the automobile did not amount to an illegal search. (See also *People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273].)

The rule is well established that seeing what is in plain sight does not constitute a search. "A search implies a prying into hidden places for that which is concealed. . . . While it has been said that ordinarily searching is a function of sight, it is generally held that mere looking at that which is open to view is not a 'search'." (*People* v. *West,* 144 Cal.App. 2d 214, 219-220 [300 P.2d 729]; *United States* v. *Lee,* 274 U.S. 559, 563 [47 S.Ct. 746, 71 L.Ed. 1202].)

In *People* v. *McLaine,* 204 Cal.App.2d 96, 101-102 [22 Cal. Rptr. 72], it was held that no search was involved in finding a gun in an automobile, where it appeared that the police officer who stopped the car to investigate and interrogate its occupants, saw the end of the gun protruding from the seat of the vehicle as he directed the light of his flashlight through an open door.

In the case before us the search by the officers did not begin until Deputy Foreman opened the car door to investigate after he had observed the cigarette by flashlight. Two circumstances gave him the probable cause required to permit the search. One, the cigarette which appeared to him

to be similar to other cigarettes he had seen on more than 50 occasions containing marijuana and two, the furtive movement of defendant in reaching under the front seat when asked for his driver's license. Under these circumstances it was entirely reasonable for the deputy to have the belief or suspicion that a crime had been or was being committed and to examine the cigarette. The examination having confirmed his suspicions his arrest of defendant was proper.

Defendant cites *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57], in support of his contention that a search is not justified where it bears no relation to a traffic violation for which an automobile is stopped. Defendant ignores, however, the additional holding of the case that officers once having stopped a person for questioning may observe during the questioning other circumstances which give them probable cause for the person's arrest and the seizure of evidence.

The judgment is affirmed and the purported appeal from the order denying defendant's motion for a new trial is dismissed.

Burke, P. J., and Kingsley, J., concurred.