[Crim. No. 9800. First Dist., Div. Two. Dec. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JEAN MARIE TURNER, Defendant and Appellant.

**COUNSEL**

William R. Higham, Public Defender, and Ellen Sickles Green, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant appeals from a judgment entered on a jury verdict finding her guilty of forgery (Pen. Code, § 470) and possession and uttering of a check with intent to defraud (Pen. Code, § 475a). She contends that: 1) the trial court erred in rejecting her proffered instructions on circumstantial evidence; 2) she was deprived of due process when asked to model before the jury a scarf and sunglasses similar to those worn by the person who cashed the check; 3) the court erred in permitting the jury, on its own request, to receive new evidence after the submission of the case; and 4) failure of the court to give a specific intent instruction, *sua sponte,* was prejudicial error. We have concluded that there is no merit to any of these contentions and that the judgment must be affirmed.

Viewing the record most stongly in favor of the judgment, as we must, the following facts appear. Mr. McDonald customarily received in the mail monthly public disability checks for his daughter, Charlene Hazelett. On July 3, 1970, he gave her a check for $180 that he had received on July 2.

On July 4, Charlene had the check in her pocketbook and had neither signed it nor attempted to cash it. About 1 p.m., she entered the Mariner's Club bar in Point Richmond, California, where a large number of people gathered to celebrate the holiday. Between 2 and 3 p.m. Charlene was invited to go on a motorcycle ride and left her pocketbook with her friend, defendant. Mr. McDonald came into the bar after Charlene left and saw defendant sitting alone at a table with Charlene's purse next to her. When Charlene returned to reclaim her purse about 1 a.m. on the following morning, the bartender had her purse but the check was missing. She then notified the police.

During the week of July 1, 1970, Mrs. Lee, who worked at the cashier's desk of the Food Bowl Market in San Pablo, cashed Charlene's public disability check. Mrs. Lee gave the $180 to a woman who signed the check in her presence and produced for identification Charlene's Social Security card. A photograph taken of the woman at that time indicated that the woman wore hair curlers, sunglasses, a scarf and a print blouse. At the trial, Mrs. Lee identified the woman who had cashed the check as defendant.

Subsequently, the check was returned to Mr. Lee, the owner of the market who called the police on August 17, 1970. Mr. Lee had previously contacted Charlene, who told him that she believed that defendant had taken the check. Officer Hamilton of the San Pablo Police Department, who investigated the matter, went to defendant's home and secured a hand-

writing exemplar after giving her proper constitutional warnings. At this time, Officer Hamilton noticed that defendant had a beauty mark tattoo on the right side of her face, similar to what appeared to be a mole on the right side of the face of the woman whose picture had been taken at the Food Bowl Market when Charlene's check was cashed.

An expert witness analyzed the signature on the check, defendant's handwriting exemplar, and another produced by Charlene in his presence. The expert concluded that Charlene did not sign the disability check; however, he could not tell whether defendant had signed it.

Defendant admitted being in the Mariner's Club on July 4. She indicated that Charlene had thrown the purse under the table at which defendant had been sitting. Defendant denied taking the check, endorsing or cashing it.

At the conclusion of the prosecution's case, at the request of the prosecution, defendant was asked to put on a scarf and sunglasses and stand before the jury to enable them to compare her appearance with the videomonitor photograph taken when the check was cashed. The articles of apparel had been obtained by the district attorney and were worn in approximately the same manner as shown in the photograph.

During the second day of its deliberations (Dec. 16), the jury requested an enlargement of the photograph or expert testimony on the identification of defendant in relation to the photograph. This request was denied. The following day (Dec. 17), the jury asked to be allowed to compare defendant with the photograph, but specifically requested that defendant not be dressed up to resemble the woman in the photograph. Defendant was told to raise her arms with palms outward to correspond to the photograph. Defendant's counsel did not object to this pose.

Subsequently, over a defense objection, the jury used magnifying glasses to assist them in comparing the lines of defendant's hands with the photograph.

 Defendant first contends that the trial court erred to her prejudice by refusing her proffered instructions on circumstantial evidence, based on CALJIC Nos. 2.01 and 2.02, set forth below.[1] Defendant, citing *People* v.

[1]So far as pertinent, CALJIC No. 2.01: "You are not permitted to find the defendant guilty of [the] [any] crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt."

CALJIC No. 2.02: "The specific intent with which an act is done may be mani-

*Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1], erroneously contends that in the instant case, her specific intent was shown only by circumstantial evidence and that the denial of the instructions was highly prejudicial.[2] The record indicates that proper instructions were given on the weight afforded to direct and circumstantial evidence, the quantum of evidence required to show guilt beyond a reasonable doubt, and the specific intent required.

Here, the requisite acts and intent were possession of the check and endorsing and receiving money for it with the specific intent to defraud. Defendant's possession of the check was shown by the testimony of Charlene and her father, and the endorsement and cashing and use of Charlene's Social Security card for identification by the testimony of Mrs. Lee. ██ In addition, the video-monitor photograph of the person who cashed the check was direct evidence that the person photographed did so (cf. *People* v. *Doggett,* 83 Cal.App.2d 405 [188 P.2d 792]). ██ Thus, every element of the two offenses charged was shown by direct evidence,[3] and the proffered instructions properly refused.[4]

██ Defendant, relying on *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], contends that she was deprived of due process by being asked to dress in a scarf and sunglasses similar to those worn by the woman in the photograph taken when the check was cashed. The record indicates that Mrs. Lee had identified defendant as the woman

---

fested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to . . . but are irreconcilable with any other rational conclusion.

"Also, if the evidence as to such specific intent is susceptible of two reasonable interpretations, one of which points to the existence thereof and the other to the absence thereof, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

[2]In *People* v. *Yrigoyen, supra,* the defendant was accused of writing a check with insufficient funds to cover it. The specific intent required was that the defendant knew that his funds were insufficient when he wrote the check. The People relied on circumstantial evidence to infer the knowledge of the depleted condition of his bank account from the fact. On reversal, the Supreme Court noted that it was also possible to alternatively infer that the defendant did not know the depleted condition of his account and the circumstantial evidence instruction was required.

[3]Defined as follows by Evidence Code section 410: "As used in this chapter, 'direct evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact."

[4]The rule in the federal courts and many other jurisdictions is that where the jury is properly instructed on the standards for reasonable doubt, such an instruction on circumstantial evidence is confusing and incorrect (*Holland* v. *United States,* 348 U.S. 121, 139-140 [99 L.Ed. 150, 166-167, 75 S.Ct. 127]).

who cashed the check. Also, defense counsel agreed that the items, although supplied by the district attorney, approximated those worn by the person in the photograph.

Defendant argues that because she was forced to model the scarf and sunglasses to resemble the woman in the photograph, she was subjected to an unconstitutional procedure analogous to the lineups condemned in *Wade* and *Stovall, supra*. ■ However, the more compelling analogy to the instant case is presented by the authorities holding that a defendant who is forced to exhibit a part of his body that is material to the case, is not deprived of due process (*Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed. 2d 908, 86 S.Ct. 1826]; *Holt* v. *United States,* 218 U.S. 245 [54 L.Ed. 1021, 31 S.Ct. 2]; *People* v. *Ellis,* 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393]). While these authorities were decided before *Wade* and *Stovall,* they are not in conflict.

In *Holt* v. *United States, supra,* a question arose as to whether a blouse belonged to the defendant. A witness testified that the defendant was required to put it on and that it fitted him. In rejecting the defendant's contention that being forced to model the blouse violated the right against self-incriminaion, Justice Holmes said, at pages 252-253 [54 L.Ed. at p. 1030]: "But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. *The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.* Moreover, we need not consider how far a court would go in compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent. *Adams* v. *New York,* 192 U.S. 585." (Italics added.)

*Schmerber* v. *California, supra,* relying on *Holt,* held at page 765 [16 L.Ed.2d at p. 916] that the taking of a blood sample did not constitute a violation of a defendant's Fifth Amendment rights because physical exhibitions do not involve "even a shadow of testimonial compulsion upon or enforced communication by the accused."

■ *Wade* and *Stovall,* on the other hand, were addressed to the lineup situation where a witness to the crime is shown a number of similar appearing persons and asked to pick out any that he recognizes. At that critical stage of the proceedings, tests of reliability of the eyewitness' extrajudicial identification, the accused is entitled to the presence of counsel. *Wade* and

its companion case, *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], "fashion exclusionary rules to deter law enforcement authorities from *exhibiting* an accused to witnesses *before* trial for identification purposes without notice to and in the absence of counsel" (*Stovall, supra,* at p. 297 [18 L.Ed.2d at pp. 1203-1204]; italics added).

In the instant case, defendant, during trial, while represented by counsel and after she had been identified by Mrs. Lee, was forced to model a scarf and sunglasses similar to those worn by the woman in the videomonitor photograph. By comparing defendant with the photograph, the jury was evaluating the probative value of Mrs. Lee's identification testimony. The procedure was designed to minimize the possibility of eyewitness misidentification (*People* v. *Lawrence,* 4 Cal.3d 273, 278-279 [93 Cal.Rptr. 204, 481 P.2d 212]).

■ As the procedure was employed to achieve a permissible purpose and was not constitutionally prohibited, the only remaining question is whether it was inherently prejudicial. Prejudice could occur only if the jury were asked to compare appearances under different circumstances than those viewed by Mrs. Lee. Defendant's counsel agreed that the conditions were essentially the same. Furthermore, the trial court could have disallowed the procedure if he thought the potential for prejudice outweighed its relevance (Evid. Code, § 352; *People* v. *Lawrence, supra*).

■ Defendant contends that the trial court erred in reopening the case to permit the introduction of prejudicial "new evidence." Defendant complains of the jury's use of magnifying glasses and the posing of her with her arms up and palms out to allow a further comparison to the photograph. Defendant concedes the broad discretionary power of the trial court to reopen the case after its submission to the jury, but argues that it was error for the court to do so without a motion from either side. The fact that there was no formal motion was not significant. In the absence of an objection from either side,[5] the court was well within its discretion to permit the reopening and posing of defendant.

■ Defendant further urges that the court permitted the jury to engage in an experiment and the introduction of new evidence. We cannot agree that the use of the magnifying glasses constituted either new evidence or an experiment. ■ As stated in *United States* v. *Beach,* 296 F.2d 153 [93 A.L.R.2d 342], at pages 158-159: " 'the mere making of a more critical examination of an exhibit than was made during the trial is

---

[5]As indicated above, the record indicates that defendant did not object to the pose. Accordingly, the matter cannot be raised for the first time on appeal (*People* v. *De Santiago,* 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]).

not objectionable. For example, the use of a magnifying glass not introduced in evidence, without the knowledge and consent of the parties and without permission of the court, is not reversible error where such action involves merely a more critical examination of an exhibit.' " At most, the use of the magnifying glass involved an extension of the jury's sense of sight (cf. *United States* v. *Lee,* 274 U.S. 559 [71 L.Ed. 1202, 47 S.Ct. 746]; *People* v. *Rayson,* 197 Cal.App.2d 33 [17 Cal.Rptr. 243]).

 We note that defendant's final contention of prejudice is predicated on the affidavit of jury foreman King, set forth in full below.[6] Evidence Code section 1150, subdivision (a), provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent or to dissent from the verdict or concerning the mental processes by which it was determined."

The two sentences of the statute distinguish between overt facts that can be objectivly proved (e.g., paragraphs 1-7 of the affidavit) and subjective mental processes (i.e., paragraphs 8-9 of the affidavit) that cannot

---

[6]"I, GEORGE R. KING, declare under penalty of perjury that I was the foreman of the jury in the above-captioned case.

"That the trial in this case began on December 14, 1970; that the case went to the jury for deliberation late in the day on December 16, 1970.

"That during the deliberations the following occurred: 1. During the first day of deliberations, one of the jurors asked for a magnifying glass. One of the jurors had a small magnifying glass on a key chain and we used this to examine the photograph in evidence of the person who cashed the check.

"On the second day of jury deliberations, a member of the jury brought in a large magnifying glass. All of the jurors used this to examine in detail the photograph in evidence.

"Through the use of the magnifying glass, we discovered that identifiable lines were discernible in the palm and wrists of the woman in the photograph. We only discovered this through use of the magnifying glass. By using the magnifying glass, we traced a diagram of the palm and wrist prints of the woman in the photograph. We then requested to see the defendant. In open court, we asked the defendant to sit in a chair and hold her hands up in a manner similar to that in the photograph. This pose was one the defendant had not assumed at any time during the trial.

"While the defendant was in this pose, with her arms and palms up facing the jury, we each examined the photograph through the use of the magnifying glass. The bailiff gave us another magnifying glass to use at this time.

"We each then compared the magnified photograph with the defendant's uplifted arms and hands.

"Then we retired to the jury room and immediately agreed upon a verdict of guilty as to both counts charged.

"Without this comparison of the magnified photograph with the defendant's palms and wrists, we were deadlocked and unable to reach a verdict."

be proven. As the final paragraphs of the affidavit here indicating the effect on the jury purport to describe a mental process, they are inadmissible (*People* v. *Hutchinson*, 71 Cal.2d 342, 349-350 [78 Cal.Rptr. 196, 455 P.2d 132]; *People* v. *Stevenson*, 4 Cal.App.3d 443, 444-445 [84 Cal.Rptr. 349]).

At oral argument, defendant for the first time indicated that no instruction on the concurrence of act and specific intent was given. Both offenses charged required the specific intent to defraud. Consequently, even in absence of a request, an instruction on the subject should have been given by the court on its own motion (*People* v. *Ford*, 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892], cert. den. 377 U.S. 940 [12 L.Ed.2d 303, 84 S.Ct. 1342]), and the omission was error. However, the joint operation of the requisite conduct and the specific intent to defraud were overwhelmingly established by the possession of the check, its endorsement and the reception of the money for it. We think it inconceivable that the jury could have arrived at a contrary verdict even if the specific intent instruction prescribed in CALJIC No. 3.31 had been given. Thus, the failure to do so was not prejudicial (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]).

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1972. Peters, J., was of the opinion that the petition should be granted.