[No. AO22150. First Dist., Div. Two. Nov. 22, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS HOPKINS, Defendant and Appellant.

**COUNSEL**

Robert J. Evans for Defendant and Appellant.

John J. Meehan, District Attorney, and Ralph Countryman, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—Dennis Hopkins appeals his conviction following jury trial of threatening a school official in violation of Penal Code section 71.[1] We conclude that the trial court erred in failing to instruct the jury that violation of section 71 requires specific intent. We therefore reverse.

Appellant was charged with a felony violation of section 71. At the preliminary hearing, the court reduced the charge from a felony to a misdemeanor pursuant to section 17, subdivision (b).

After the jury returned a verdict of guilty, appellant was sentenced to a term of 60 days in the county jail. Execution of sentence was suspended and he was placed on probation with 30 days county jail time as a condition of probation.

The Appellate Department of the Alameda County Superior Court thereafter affirmed the judgment and, due to the significance of the issue, certified

---

[1]All references are to the Penal Code unless otherwise indicated.

the case for transfer to this court for a determination whether specific intent is an element of section 71.

## I.

Shortly before 1:30 p.m. on September 24, 1981, Jay Cleckner, the Principal of Franklin Elementary School, saw appellant in the hall and, upon inquiry, determined that he had no business in the school.

The principal then asked appellant to leave the school grounds. After he repeated this request several times appellant slowly began walking toward the main door of the building, appearing to leave. A short time later, Tommie Richardson, Jr., a teacher at the school, and Cleckner saw appellant on the campus. The principal again asked appellant to leave. Appellant replied, "Get your motherfucking hands off me." Neither the principal nor Richardson had touched him at that point. As appellant reached the main gate, he said to Cleckner, "I'll go home and get a gun and come back and shoot you." As appellant was leaving, he called from the street to Richardson, "And I'll shoot you, too."

Because of the apparent seriousness of the threats, the principal told his secretary and other personnel to leave the school premises about 40-45 minutes earlier than would normally be the case.

At trial both Cleckner and Richardson identified appellant as the person involved in the incident. Appellant presented an alibi defense.

The primary issue on appeal is whether section 71 describes a specific intent or a general intent crime. Section 71 provides in pertinent part: "Every person who, *with intent to cause, attempts to cause, or causes,* any officer or employee of any public or private educational institution or any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense . . ." (italics added).[2]

---

[2]Section 71 provides in its entirety: "Every person who, with intent to cause, attempts to cause, or causes, any officer or employee of any public or private educational institution or any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense punishable as follows: [¶] (1) Upon a first conviction, such person is punishable by a fine not exceeding five thousand

With respect to the element of intent required to convict of a violation of section 71, the trial court instructed the jury as follows: "In order to prove the commission of a violation of section 71 of the Penal Code, the following elements must be proved. ". . . that the person making the threat intended to cause, attempted to cause or caused any school officer or employee to do or refrain from doing any act in performance of his duties."

The court then followed with an instruction on general intent: "When a person intentionally does that which the law declares to be an offense, he is acting with criminal intent, even though he may not know that his conduct is unlawful, or even though he may not intend to violate the law." (See CALJIC No. 3.30—concurrence of act and general criminal intent.)[3]

■ In order to determine whether specific intent is an element of the offense of threatening a school employee, we must look first to the plain language of the statute. In determining legislative intent "[t]he court turns first to the words themselves for the answer." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1], cert. den. 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].) ■ We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500].) "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Turning to section 71, it is evident that the phrase "with intent to cause" contains no verb. It modifies the phrase "attempts to cause, or causes." The phrase, "by means of a threat," also modifies the verbs "attempts" and "cause." Since even an attempted act violates the statute, the threat need not cause the act.

■ Thus, the elements of the offense are: "(1) A threat to inflict an unlawful injury upon any person or property; (2) direct communication of the threat to a public officer or employee; (3) the intent to influence the performance of the officer or employee's official duties; and (4) the apparent

---

dollars ($5,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment. [¶] (2) If such person has been previously convicted of a violation of this section, such previous conviction shall be charged in the accusatory pleading, and if such previous conviction is found to be true by the jury, upon a jury trial, or by the court, upon a court trial, or is admitted by the defendant, he is punishable by imprisonment in the state prison. [¶] As used in this section, 'directly communicated' includes, but is not limited to, a communication to the recipient of the threat by telephone, telegraph, or letter."

[3]This instruction is specifically termed a general intent instruction on the court's list of instructions.

ability to carry out the threat." (63 Ops.Cal.Atty.Gen. 5, 7 (1980).)[4] The offense is punishable only if all elements of the offense are present.

■ With respect to the difference between specific and general intent, Justice Traynor has observed: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. *When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. . . .*" (*People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], italics added.)

■ In section 71 the proscribed act is the threat and the additional consequence is the interference with the official's duties. From the plain language of the statute, it is clear that section 71 is a specific intent crime, thereby excluding pranks, misunderstandings and insane threats.

Moreover, as Justice Traynor pointed out in *People* v. *Hood, supra,* 1 Cal.3d 444, 457 . . . "the word 'attempt' . . . strongly suggests goal-directed intentional behavior." (Fn. omitted.) (See also *People* v. *Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281].) Section 71 also prohibits threats which attempt to interfere as well as threats which actually interfere.

Were we to conclude that the statute were ambiguous on this point, we would be compelled to adopt that construction most favorable to defendant. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 217 [168 Cal.Rptr. 455, 617 P.2d 1087]; *People* v. *Smith* (1955) 44 Cal.2d 77, 79 [279 P.2d 33]; *In re Fain* (1983) 145 Cal.App.3d 540, 549 [193 Cal.Rptr. 483]; see, e.g., *People* v. *Superior Court* (*Douglass*) (1979) 24 Cal.3d 428, 435 [155 Cal.Rptr. 704, 595 P.2d 139].)

This interpretation appears reasonable, not only in light of the express wording of section 71, but also when that statute is considered together with similar statutes relating to the functioning of schools. (See §§ 626-626.10, 627-627.11.) Sections 626 through 626.10 and 627 through 627.11 proscribe various offenses related to the functioning of schools and access to school premises. Of these sections, only one, section 626.9 prohibiting firearms, provides for a penalty on a par with section 71, which may be pun-

---

[4]The Attorney General's opinion, although addressing a different issue, appears to recognize the specific intent requirement of this section. (63 Ops.Cal.Atty.Gen., *supra.*)

ished as either a felony or a misdemeanor, with a maximum penalty of three years in the state prison if prosecuted as a felony. (See § 18.)

Pursuant to section 626.6 if a person who is not a student, officer or employee of the school and who is not required to be on campus commits an act "likely to interfere with the peaceful conduct of the activities of such campus or facility" and fails to leave upon being directed to do so by the employee or officer designated to maintain order on campus, that person may be punished at most by six months in county jail and a $500 fine. The elements of section 626.6 are very similar to those of section 71 except for the elements of a threat and specific intent to interfere. A threat alone, without the intent to coerce, would not explain the difference in penalties. However, the intent to coerce or interfere which is required by section 71 manifests greater culpability and justifies greater punishment.

It is unlikely that the Legislature would assign such disparate penalties to similar acts absent an assessment that greater culpability attaches to violation of section 71. The requirement of specific intent to interfere is consistent with such assessment.

The appellate division of the superior court recognized that the language of section 71 appears to require specific intent as an element of the crime. However, the appellate division concluded that *In re Zardies B.* (1976) 64 Cal.App.3d 11 [134 Cal.Rptr. 181], holds otherwise.

We believe *Zardies B.*, is not germane to the precise legal issue before us. In *Zardies B.* the court held that section 71 prohibits direct threats of physical injury that prevent a public school employee from doing his or her duty. In that case, Zardies prevented a teacher, Azevedo, from teaching and tried to prevent her from ejecting him from the classroom by the threat of physical injury. Zardies argued on appeal that "proof of a threat includes the intent to carry it out and obtain compliance." Rejecting this contention, the court held that the intent to carry out the threat was not necessary. "[R]ather an expression of one's intent to cause harm by illegal means is all that is required." (*Id.*, at p. 14.) The court also found that the element of interference was satisfied, stating: "Zardies argues his threat was not intended to stop Azevedo from teaching and, thus, he committed no offense. The question, however, is, did Zardies' threat in fact cause Azevedo '. . . to do, or refrain from doing, *any act* in the performance of [her] duties. . . .'? (Italics ours.) Zardies' threat was in response to an attempt to eject him from the classroom. Not only did it keep the class from learning activities but it also made it necessary for Azevedo to ask Zardies again to leave the room. This satisfies the element of interference." (*Ibid.*)

The court concluded that the statute did not require the People to prove that it reasonably appeared that Zardies *would* carry out the threat, but only that it appeared that he *could* carry it out. (*Ibid.*)

While the court's treatment of these issues arguably may be open to the interpretation that the court read section 71 to require only general intent, we do not so construe the opinion. The only specific holding of *Zardies B.* arguably pertinent to the issue before us, which the court relates to "the element of interference," not the element of intent, is that the defendant need not intend to carry out the threat, so long as he intends to cause a school employee ". . . to do or refrain from doing, *any act* in the performance of [her] duties . . .," (italics in original), regardless whether such duties may technically be defined as "teaching." (*Ibid.*) But the opinion does not clearly indicate whether the requisite intent need be specific.[5]

In short, we do not consider that our conclusion that section 71 defines a specific intent crime is necessarily inconsistent with *Zardies B.* To the extent the opinion in that case may be read to imply that section 71 defines a general intent crime, we decline to follow it as we are convinced by a careful reading of the statute and by the additional considerations earlier set forth that specific intent is a necessary element of the offense.

■ Where, as here, specific intent is an element of the crime, it is the duty of the trial court, *sua sponte,* to give the instruction on its own motion. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Turner* (1971) 22 Cal.App.3d 174, 184 [99 Cal.Rptr. 186]; see *People* v. *Williams* (1980) 102 Cal.App.3d 1018, 1029 [162 Cal.Rptr. 748].) Failure of the trial court to so instruct in this case was error.

■ "The due process clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged in order to obtain a conviction." (*People* v. *Burres* (1980) 101 Cal.App.3d 341, 352 [161 Cal.Rptr. 593]; accord, *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) Thus, we utilize the standard set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], in determining whether the error was prejudicial. ■ That standard requires us to determine whether the error was harmless beyond a reasonable doubt. (See *People* v. *Turner, supra,* 22 Cal.App.3d 174, 184; accord *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1,

---

[5]Since *Zardies B.* involved a juvenile tried by the court, the propriety of jury instructions was not presented.

518 P.2d 913], disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].)

On the record before us we cannot say that the error was harmless beyond a reasonable doubt. That the jury rejected appellant's alibi defense in convicting him does not compel the conclusion that it necessarily found that he acted with the requisite intent.

■ At the same time, we reject appellant's contention that the evidence presented would not support a finding of specific intent. Appellant claims that "[t]he record is utterly without evidence, direct or circumstantial, that the remarks were made with the intent to cause the principal . . . to do, or refrain from doing, any act in the performance of his duties." We do not so read the record. Specific intent is a question of fact for the jury. "[I]ntent is rarely susceptible of direct proof and may be inferred from the circumstances disclosed by the evidence." (*People* v. *Walls* (1978) 85 Cal.App.3d 447, 452 [149 Cal.Rptr. 460].) The evidence presented is susceptible to the inference that appellant threatened the school officials in order to cause them to cease their efforts to eject him from the school grounds. Such reasonable inference would support a finding that appellant acted with specific intent to prevent school officials from carrying out their duties. We therefore decline to order the trial court to enter a dismissal.

To summarize, we conclude that specific intent is an element of Penal Code section 71, and that the trial court erred in failing to so instruct the jury. Because we cannot conclude beyond reasonable doubt that the error was harmless or that the jury necessarily determined the issue in its verdict, we reverse.

Rouse, J., and Miller, J., concurred.