[No. H026961. Sixth Dist. Dec. 1, 2004.]

In re ERNESTO H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ERNESTO H., Defendant and Appellant.

COUNSEL

Michael Kresser, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WALSH, J.**—A public school physical education teacher saw a student acting as a lookout for two classmates attempting to fight. As the teacher approached, the student warned the classmates. The teacher directed the student not to act as a lookout and to move to another area. Stepping toward the teacher with clenched hands at his side, the student replied, "Yell at me again and see what happens."

A juvenile court found true the allegation that the student violated Penal Code section 71, which prohibits a person from attempting to cause a public employee to refrain from doing any act in the performance of his duties by means of a threat to inflict unlawful injury. On appeal, the student argues that his words did not constitute such a threat.

We are called upon in this case to interpret the standard of review pursuant to the recent California Supreme Court decision of *In re George T.* (2004) 33 Cal.4th 620 [16 Cal.Rptr.3d 61, 93 P.3d 1007] (*George T.*). Here, because the

minor raises a "plausible First Amendment defense," we make an "independent examination of the record" in accord with *George T.*, "to ensure that the speaker's free speech rights have not been infringed by the trier of fact's determination that the communication at issue constitutes a criminal threat." (*Id.* at p. 632.) Having done so, we conclude that the minor made a criminal threat and that his free speech rights were not infringed.

In the remainder of the opinion, we also conclude that there is sufficient evidence to find that the minor made the threat with the specific intent to interfere with the teacher's duties, and that the juvenile court did not abuse its discretion in denying a motion for continuance. Thus, we affirm the juvenile court's jurisdictional order.

## BACKGROUND

On October 23, 2003, the victim, James Lockwood, was teaching a physical education class at Soledad High School. At one point during his class, two students attempted to engage in a fight. When he interceded, the students told him they were just playing. Nevertheless, Lockwood separated them. Later in the period, the same two students went to a secluded area out of Lockwood's sight. The minor, Ernesto H., had gone with them and was standing near the corner of the building between Lockwood and the two students apparently to act as a lookout. The minor was looking at Lockwood and looking back inside the secluded area. Lockwood believed the students were again attempting to fight. He began walking quickly toward their location, yelling at them to stop fighting. He heard the minor saying " 'Maestro, maestro,' " which means "teacher," when he was about 10 feet away from the minor.

When Lockwood was about two to three feet away from the minor, in addition to yelling at the students to stop fighting, he informed the minor that being a lookout was not "okay." The minor said, " 'Don't yell at me.' " Lockwood did not recall exactly what else was said, because he was simultaneously dealing with the two students whom he believed to be fighting. Lockwood did remember telling the minor in a loud voice to move to another area. The minor apparently moved approximately 10 feet away. The minor then said, " 'Yell at me again and see what happens.' "[1] When the

---

[1] Initially, Lockwood testified that the minor said, " 'Don't. If you yell at me, I'll do something.' " Then Lockwood added, "I don't remember his words. [¶] Q. [Prosecutor]. Did you speak to a police officer that day? [¶] A. Yes, I did. [¶] Q. And you say you don't recall the exact words that you said? [¶] A. I'm sure the police report that I reviewed was correct—[¶] Q. Okay. [¶] A.—in that statement. [¶] Q. Did you tell the officer at that time exactly what Ernesto said? [¶] A. Yes. [Then Lockwood refreshed his memory with the police report.] [¶] . . . [¶] 'Yell at me again and see what happens.' "

minor spoke, his head was tilted back, and he took a step toward Lockwood, and Lockwood had a "slight" recollection that the minor's hands were "clenched" at his sides.[2] Lockwood asked the minor if he was threatening him. The minor did not deny the threat, as Lockwood had hoped he would. Although he did not believe the minor was going to hurt him at that moment, he thought the minor might retaliate in the future. Lockwood felt threatened. He felt that, at that point, the minor was very upset and was serious about what he was saying. Lockwood took the threat seriously and feared for his safety. The minor was sent to the school office, and the police became involved that day. Lockwood told the police officer that he feared for his safety.

On October 27, 2003, a wardship petition was filed against the minor, based on allegations that he threatened a public school official in violation of Penal Code section 71 (count 1) and threatened to commit a crime that would result in death or great bodily injury in violation of Penal Code section 422 (count 2). Following a jurisdictional hearing on December 15, 2003, the juvenile court found the allegations in count 1 true and the allegations in count 2 not true. The court explained its reasoning for sustaining the allegations that the minor violated Penal Code section 71, as follows: "All right. The Section 71 is aimed at conduct, verbal-type, directed at teachers or employees of schools designed to coerce them into doing things or out of doing things. And in this situation the teacher was trying to prevent a fight, was taking action that he felt was necessary to maintain safety and order on the school grounds; whereupon this minor took offense and said, ' "Yell at me again and see what happens. Don't yell at me. Yell at me again and see what happens." ' [¶] He was clearly attempting to dissuade the officer—or the teacher from taking action. And he threatened him. He said, [if] you do that again, I'm going to do something to you. That is the way I interpret that statement under the circumstances, given his stance, his throwing his head back." A dispositional hearing was set for January 7, 2004.

On January 6, 2004, the minor filed a motion to continue the jurisdictional hearing under Welfare and Institutions Code section 682. The motion was based on the declarations of the minor's attorney and James Lockwood. The minor's attorney declared that, after the jurisdictional hearing, James Lockwood approached her and said he did not believe the minor was trying to prevent him from doing his job when the minor stated " 'Yell at me again and see what happens.' " As a result of this statement, she wanted to set the

---

[2] "A. [Lockwood] . . . you are asking me to describe his body language? [¶] Q. Yes. [¶] A. His hands were down but he did take a step towards me and—[¶] Q. So as he said that, he took a step towards you? [¶] A. Yes. [¶] Q. Now you said his hands were down. Did you see anything about his fists? [¶] A. I slightly recall that his hands were flinched—or clenched, but I don't totally remember if that was accurate. [¶] Q. Did he do anything with his head? [¶] A. Tilted it back."

matter for reconsideration of the court's finding at the jurisdictional hearing, or set the matter for a motion for a new trial. She finally stated that she had been on vacation until January 5, 2004, and had not had the opportunity to prepare "such a motion."

James Lockwood declared that, after the hearing on December 15, 2003, he had remained at the juvenile courthouse to speak with the minor's attorney. He told the minor's attorney that he did not think the minor was trying to prevent him from doing his job when the minor stated, " 'Yell at me again and see what happens.' " Lockwood believed the minor was being "reactionary" because he felt embarrassed and challenged in front of the rest of the class when Lockwood yelled at him. Lockwood further stated he felt that the minor was interfering with his job as a teacher earlier in the incident by acting as a lookout and calling " 'Maestro, Maestro' " when Lockwood approached the fighting students. Lockwood's declaration was executed December 18, 2003.

The juvenile court denied the request for a continuance at the dispositional hearing on January 7, 2004. The court read Lockwood's declaration but was still convinced that the threatening statement was made with the improper intent to influence Lockwood's conduct. The court explained: "I'm not inclined to continue the matter. [¶] In reading Mr. Lockwood's declaration, I find it somewhat troubling. The words spoken are clearly threatening. They are informing you that, if you do something the student doesn't like, he's going to do something unpleasant to you or about you. [¶] . . . [¶] And so I found the comments to be improperly threatening, and I still think they're improperly threatening. And I intend to proceed with the dispositional hearing."

The trial court thereafter declared the minor a ward of the court, found the offense to be a misdemeanor, and placed the minor on probation for two years, subject to conditions of probation as recommended in the probation report including time in juvenile hall and standard gang conditions.

The minor filed a notice of appeal on January 9, 2004.

## DISCUSSION

### I

### Penal Code Section 71

*Standard of Review*

The minor initially contended in his opening brief that, under a sufficiency of the evidence test, the evidence was insufficient to support the juvenile

court's findings. However, shortly before oral argument, the Supreme Court decided the case of *George T.*, and concluded that a reviewing court should use the standard of independent review wherever a defendant raises a plausible First Amendment defense. In oral argument and in post-argument supplemental briefing, the minor now contends that the proper standard to review whether his conduct constituted a true threat in this case is the standard of independent review. He urges reversal of the juvenile court's finding that he threatened his teacher in violation of Penal Code section 71. The Attorney General agrees that the independent review standard is appropriate, but insists even under that standard, the minor's conduct was a true threat and not protected speech.

■ Violent times heighten our nation's awareness of the entitlement of people not only to be safe but to feel safe. In the eagerness to achieve that safety, however, our society must be vigilant to avoid trampling the essential freedoms which make this country unique. *George T.* instructs us that our courts must accept their allotted role to insert themselves into the interplay between freedom and safety so as to nurture the one without diminishing the other.

We do this in part through independent review—a review that does not simply second-guess the trier of fact, but a review that determines " 'whether a given course of conduct falls on the near or far side of the line of constitutional protection.' (*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.* (1995) 515 U.S. 557, 567 [132 L.Ed.2d 487, 115 S.Ct. 2338], citing *Bose* [*Corp. v. Consumers Union of U.S., Inc.* (1984)] 466 U.S. [485,] 503 [80 L.Ed.2d 502, 104 S.Ct. 1949] [(*Bose*)].)" (*George T., supra,* 33 Cal.4th at p. 632.)

In *George T.*, our Supreme Court considered "whether a high school student made a criminal threat by giving two classmates a poem labeled 'Dark Poetry,' which recites in part, 'I am Dark, Destructive, & Dangerous. I slap on my face of happiness but inside I am evil!! For I can be the next kid to bring guns to kill students at school. So parents, watch your children cuz I'm BACK!!' " (*George T., supra,* 33 Cal.4th at p. 624.) The court concluded that the ambiguous nature of the poem, along with the circumstances surrounding its dissemination, failed to establish that the poem constituted a criminal threat. In reaching its conclusion, the Supreme Court determined that, as in other cases where a defendant raises a "plausible First Amendment defense," a reviewing court should make an independent examination of the record to ensure that a speaker's free speech rights have not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat. (*Id.* at p. 632.) The juvenile petition had alleged that in "Dark Poetry," George had made criminal threats in violation of Penal Code

section 422. The juvenile court had found the allegations true as to the two students. "Over a dissent, the Court of Appeal [Sixth District] affirmed the juvenile court in all respects [on the basis of the substantial evidence standard] with the exception of remanding the matter for the sole purpose of having that court declare the offenses to be either felonies or misdemeanors." (*George T., supra,* 33 Cal.4th at pp. 629–630.) The Supreme Court granted review and then reversed.

Nearly half of the Discussion part of the opinion in *George T.* is devoted to the correct standard of review. The Supreme Court carefully explained its conclusion that the communication at issue there, "Dark Poetry," found by the juvenile court to constitute a criminal threat under Penal Code section 422, must be subjected to an independent review by the reviewing court. The minor there and amici curiae had asserted that because First Amendment interests are implicated by the determination that the minor's poem constituted a threat, the Supreme Court "should employ the independent review standard, which entails an examination of the ' " 'statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect.' " ' (*Harte-Hanks Communications, Inc. v. Connaughton* (1989) 491 U.S. 657, 688–689 [105 L.Ed.2d 562, 109 S.Ct. 2678] (*Harte-Hanks*), quoting *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 285 [11 L.Ed.2d 686, 84 S.Ct. 710]; see also *Bose*[, *supra,*] 466 U.S. 485 [80 L.Ed.2d 502, 104 S.Ct. 1949] . . . .)" (*George T., supra,* 33 Cal.4th at p. 631.) The Attorney General disagreed, contending that the court should not depart from the substantial evidence standard because "the high court decisions cited by minor are inapposite, and this court has already determined that [Penal Code] section 422 is constitutional." (*Ibid.*)

The court explained that "[i]ndependent review, which 'assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge' (*Bose, supra,* 466 U.S. at p. 501), 'is a rule of federal constitutional law' (*id.* at p. 510). It is necessary 'because the reaches of the First Amendment are ultimately defined by facts it is held to embrace' and an appellate court must decide 'whether a given course of conduct falls on the near or far side of the line of constitutional protection.' (*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*[, *supra,*] 515 U.S. 557, 567 [132 L.Ed.2d 487, 115 S.Ct. 2338], citing *Bose, supra,* 466 U.S. at p. 503.)" (*George T., supra,* 33 Cal.4th at pp. 631–632.)

"We conclude that a reviewing court should make an independent examination of the record in a section 422 case when a defendant raises a plausible First Amendment defense to ensure that a speaker's free speech rights have

not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat. (*Bose, supra,* 466 U.S. 485.)" (*George T., supra,* 33 Cal.4th at p. 632.) The court emphasized: "Independent review is particularly important in the threats context because it is a type of speech that is subject to categorical exclusion from First Amendment protection, similar to obscenity, fighting words, and incitement of imminent lawless action. 'What is a threat must be distinguished from what is constitutionally protected speech.' (*Watts v. United States* [(1969)] 394 U.S. [705,] 707 [22 L.Ed.2d 664, 89 S.Ct. 1399].)" (*George T., supra,* 33 Cal.4th at p. 634.)

In the case before us, the juvenile court found that the minor had committed a violation of Penal Code section 71. That section provides, in pertinent part: "Every person who, with intent to cause, attempts to cause, or causes, any . . . employee of any public . . . educational institution . . . to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense . . . ."

The purpose of the statute is to prevent threatening communications to public officers or employees designed to extort their action or inaction. (*People v. Zendejas* (1987) 196 Cal.App.3d 367, 376 [241 Cal.Rptr. 715].) The essential elements under Penal Code section 71 are: " '(1) A threat to inflict an unlawful injury upon any person or property; (2) direct communication of the threat to a public officer or employee; (3) the intent to influence the performance of the officer or employee's official duties; and (4) the apparent ability to carry out the threat.' " (*People v. Hopkins* (1983) 149 Cal.App.3d 36, 40–41 [196 Cal.Rptr. 609]; *see also People v. Walker* (1988) 47 Cal.3d 605, 639 [253 Cal.Rptr. 863, 765 P.2d 70] [citing *Hopkins* with approval].)

The minor specifically challenges the juvenile court findings regarding two of the four elements of a Penal Code section 71 violation: that he threatened the teacher and that he had the specific intent to interfere with the teacher's duties. Both the minor and the Attorney General agree that, as a reviewing court, we conduct an independent review of the first element to see whether the minor's First Amendment rights are violated by the juvenile court's finding that he threatened the teacher; but, as to the second challenged element, the customary standard of review for substantial evidence in support of the juvenile court's finding is applicable.[3]

The *George T.* court explained: "Independent review is not the equivalent of de novo review 'in which a reviewing court makes an original appraisal of

---

[3] Minor's appellate counsel conceded at oral argument that the element of intent was not subject to the independent review standard.

all the evidence to decide whether or not it believes' the outcome should have been different. [Citation.] Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue. [Citations.] As noted above, under the substantial evidence standard, the question is whether any rational trier of fact could find the legal elements satisfied beyond a reasonable doubt, whereas under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. Accordingly, we will defer to the juvenile court's credibility determinations, but will ' " 'make an independent examination of the whole record' " ' [citations], including a review of the constitutionally relevant facts ' "de novo, independently of any previous determinations by the [juvenile court]" ' [citations] to determine whether minor's poem was a criminal threat entitled to no First Amendment protection." (*George T., supra,* 33 Cal.4th at p. 634.)

The Attorney General points to the case of *Planned Parenthood v. Amer. Coalition of Life* (9th Cir. 2002) 290 F.3d 1058 (*Planned Parenthood*), as a demonstration of the dual approach, where the reviewing court makes a review of the entire record for substantial evidence supporting the trial court's finding, and an independent review of the evidence implicating the First Amendment. In *Planned Parenthood,* certain abortion providers brought suit against anti-abortion activist organizations under the Freedom of Access to Clinic Entrances Act (FACE), based on the actions of the organizations in publicly disclosing names and addresses of providers through posters and an Internet web site. The district court entered judgment in favor of the providers and granted a permanent injunction. Initially, the Ninth Circuit reversed. Then, on rehearing en banc, the court of appeals held that: (1) The actions of the anti-abortion activist organizations in publicly disclosing the names and addresses of abortion providers, through "Guilty" posters and an Internet Web site, constituted true "threats of force" within the meaning of FACE, and thus were not protected speech under the First Amendment; and, (2) the district court would evaluate the punitive damages award and make findings with respect to its propriety.

The court stated: "Construing the facts in the light most favorable to physicians, the verdict is supported by substantial evidence. ACLA was aware that a 'wanted'-type poster would likely be interpreted as a serious threat of death or bodily harm by a doctor in the reproductive health services community who was identified on one, given the previous pattern of 'WANTED' posters identifying a specific physician followed by that physician's murder. The same is true of the posting about these physicians on that part of the 'Nuremberg Files' where lines were drawn through the names of doctors who provided abortion services and who had been killed or wounded. We are independently satisfied that to this limited extent, ACLA's conduct

amounted to a true threat and is not protected speech." (*Planned Parenthood, supra,* 290 F.3d at p. 1063.)

█ However, the Attorney General then states in his supplemental brief: "Independent review does not re-examine the facts as found by the trier of fact; those are subject to the deferential standard of review used in evaluating the sufficiency of the evidence. Rather, what is reviewed independently is whether those facts—found to be true and supported by substantial evidence—add up to a true threat or are instead found to be protected speech under the First Amendment." Certainly in the case before us, the evidence was uncontradicted and the juvenile court's determination as to Lockwood's credibility is not subject to independent review. (*George T., supra,* 33 Cal.4th at p. 634.) However, we do not read *George T.* to require us to give deference to the constitutionally relevant facts because they were found to be true and supported by substantial evidence. Rather, "we will defer to the juvenile court's credibility determinations, but will ' " 'make an independent examination of the whole record' " ' [citation], including a review of the constitutionally relevant facts ' "de novo, independently of any previous determinations by the [juvenile court]" ' [citations] to determine whether minor's [words were] a criminal threat entitled to no First Amendment protection." (*Ibid.*)

█ "The First Amendment permits 'restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." ' [Citations.]" (*Virginia v. Black* (2003) 538 U.S. 343, 358–359 [155 L.Ed.2d 535, 123 S.Ct. 1536].) █ "[T]he First Amendment also permits a State to ban a 'true threat.' [Citations.] [¶] 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Citations.]" (*Id.* at p. 359.)

*Threat to Inflict Unlawful Injury*

█ To determine whether the minor's statement to Lockwood may be construed as a threat to inflict an unlawful injury upon person or property, we must examine not only the words spoken but also the circumstances surrounding the communication. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860 [123 Cal.Rptr.2d 193]; *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137 [105 Cal.Rptr.2d 165].) In doing so, we will keep in mind that Penal Code section 71 is designed to prohibit plausible or serious threats and "to ignore pranks, misunderstandings, and impossibilities." (*People v. Zendejas, supra,* 196 Cal.App.3d at pp. 378–379.) There is no case law that defines the nature of the injury to be threatened under Penal Code section 71. Unlike Penal

Code section 422, the statute does not define the gravity of the harm threatened. It does require that the threatened injury be of a nature that would be taken seriously and could cause the recipient to act or refrain from acting to avoid the threatened harm.

The minor's statement, "Yell at me again and see what happens," standing alone is ambiguous. The minor contends on appeal, without citing any evidence, that the statement was meant to convey an intention to engage in some nonviolent action—such as blowing off steam or bluffing or trash talking—or, if a threat, merely to go to Lockwood's superiors and lodge a complaint. However, when the statement is put in context, we disagree with the minor's contention. The minor was angry and very upset at the time the words were spoken. Simultaneously with his statement, he took a step toward Lockwood, tilted back his head, and, there was a slight recollection that he clenched his fists.[4] When Lockwood asked if the minor was threatening him, the minor did not deny it. Lockwood felt the minor was very upset and was serious about what he was saying. Lockwood told the police officer that he actually feared for his safety and believed that the minor might retaliate against him in the future. Under these circumstances, we conclude that the minor communicated a threat of unlawful injury to Lockwood within the meaning of Penal Code section 71.

The minor points to two cases where threats by a juvenile to a person in authority were found not to constitute statutory violations or true threats. We find the cases distinguishable.

In *People v. Tuilaepa* (1992) 4 Cal.4th 569 [15 Cal.Rptr.2d 382, 842 P.2d 1142], during the penalty phase of a capital case, the defendant challenged certain evidence of unadjudicated acts of past misconduct as inadmissible as an aggravating factor. During an earlier California Youth Authority commitment, when locked in a maximum security cell, the defendant made death

---

[4] In his petition for rehearing, the minor makes much of the fact that Lockwood's recollection of the minor's clenched fists was only slight, and therefore, according to the minor, was less than substantial evidence. However, we note that no objection was made to that evidence when offered, no cross-examination was conducted concerning Lockwood's level of recall, and most importantly, no contradictory evidence was presented on this issue.

"[A]ll relevant evidence is admissible." (Evid. Code, § 351.) "[R]elevant evidence shall not be excluded in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (d).) Relevancy has two elements: it must relate to a matter at issue—certainly that cannot be disputed here—and it must have "probative value." (*People v. Jones* (1954) 42 Cal.2d 219, 222 [266 P.2d 38].) The latter element, often referred to as the "weight" of the evidence, is not a factor in determining admissibility; rather the weight of the evidence is determined by the trier of fact in arriving at a decision. (*People v. Cordova* (1979) 97 Cal.App.3d 665, 669 [158 Cal.Rptr. 665].) "Evidence is relevant when no matter how weak it may be, it tends to prove the issue before the [trier of fact]. [Citation.] The weight of such evidence is for the [trier of fact]. [Citation.]" (*People v. Slocum* (1975) 52 Cal.App.3d 867, 891 [125 Cal.Rptr. 442].)

threats against female employees and threatened to burn the face of a male employee after he was reprimanded. The People had argued that such evidence was admissible as a violation of Penal Code section 71. But the record showed the recipients of the threats reported no actual fear and there was no showing of an intent to interfere with the employees' duties. Thus, the evidence did not constitute a threat against a public employee in violation of Penal Code section 71. (*People v. Tuilaepa, supra,* 4 Cal.4th at p. 590.)

In the case of *In re Ricky T., supra,* 87 Cal.App.4th 1132, the minor became angry at his teacher for accidentally hitting him with a door when the teacher opened it, and the minor retorted, "I'm going to get you." The reviewing court found insufficient evidence to support a finding that the minor had violated Penal Code section 422, uttering a terrorist threat. The court noted that, other than the actual words spoken, there were no circumstances to support the requirement that the threat be " '*so* unequivocal, unconditional, immediate, and specific [that it] convey . . . a gravity of purpose and an immediate prospect of execution of the threat . . . .' " (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1137.) The minor admitted to an investigating police officer that he said, "I'm going to kick your ass," but he told the officer he did not mean to sound threatening. (*Id.* at p. 1136.) He also admitted his actions were not appropriate and apologized for his actions. Although the minor was sent to the school office, the police were not called until the next day, and there was no evidence to suggest a prior history of disagreements or hostile remarks. The court further noted no show of physical force or display of fists. (*Id.* at p. 1138.) For the same reasons, the reviewing court found the statutory element of sustained fear, whereby the threat has "a gravity of purpose and an immediate prospect of execution of the threat" such as to cause the person reasonably to be in sustained fear for his or her own safety, was not supported by sufficient evidence. (Pen. Code, § 422.)

The facts in Ricky T. contrast in many significant aspects to the facts here. *Ricky T.* had an "emotional response" to being surprised by being hit in the head by a door, there was no physical action supporting the threatening nature of the remark, he apologized when questioned about his intention, and he said he did not mean to threaten the teacher. (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1141.) In contrast, Ernesto's words did not follow an unexpected physical encounter with the teacher, but were considered, repeated, inappropriate commands to a teacher attempting to perform his duties. According to the record, Ernesto assumed a threatening stance, he did not deny the threat when asked about it, and he did not apologize.

Moreover, Penal Code section 422, at issue in *Ricky T.,* requires that the threat both carry an "immediate prospect of execution" and cause "sustained fear," elements not present in Penal Code section 71, at issue here. The court

in *Ricky T.* described his words as "intemperate," "rude," "insolent," or "disrespectful," but noted that they did not present "so immediate" a prospect of execution nor engender in the teacher the "sustained fear for his personal safety" required for violation of the statute. (*In re Ricky T., supra,* 87 Cal.App.4th at pp. 1138–1140.) Here, the threat element of Penal Code section 71 was satisfied when Lockwood testified that he felt afraid and that he feared the minor might retaliate in the future. The minor's stepping toward the teacher and threatening stance added weight to his words. Our independent review of the constitutionally relevant facts confirms that the minor uttered a true threat, unprotected by the First Amendment.

*Intent to Influence Teacher's Performance of Duties*

We turn now to the second challenged element: that of the intent to influence the performance of the employee's official duties. The parties agree that our review is one for substantial evidence.

■ "Claims challenging the sufficiency of the evidence to uphold a judgment are generally reviewed under the substantial evidence standard. Under that standard, ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' [Citations.] ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citations.]" (*George T., supra,* 33 Cal.4th at pp. 630–631.)

■ We conclude the evidence supports the finding that the threat was made with the intent to interfere with Lockwood's duties. Intent is rarely susceptible of direct proof. Therefore, in determining whether the element of intent has been established, we consider whether it may be inferred from all the facts and circumstances disclosed by the evidence. (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [75 Cal.Rptr.2d 40].) The minor contends his threat, "Yell at me again and see what happens," was merely an angry reaction to Lockwood's conduct in yelling at him from a close distance. The minor further suggests that yelling is not an act done in performance of a teacher's duties.

If the only inference that could be drawn from the evidence were that the minor's statement was an angry outburst, the minor would be correct that Penal Code section 71 was not violated. (See *In re Ricky T., supra,* 87 Cal.App.4th 1132, 1139.) However, the juvenile court's finding that the minor

made his threat with the intent of interfering with Lockwood's duties also may reasonably be inferred from the evidence.

■ With regard to minor's claim that yelling was beyond the scope of the teacher's duties, we agree with the Attorney General that, among the many duties of a high school teacher are the duties of maintaining order, preventing fighting, and keeping students safe. When the teacher is engaged in this aspect of his duties, it is irrelevant whether the teacher is yelling or speaking softly. When the minor told Lockwood that something would happen to him unless he stopped yelling, the minor was clearly interfering with Lockwood's attempt to restore order to the physical education class. We conclude the evidence was sufficient to support the court's finding that the threat was made with the intent to interfere with a public employee's performance of duties as required by Penal Code section 71.

*Finding at Disposition*

The minor further contends that the trial court made, in effect, a factual finding at the dispositional hearing that the minor did not intend to threaten Lockwood. This finding was in contradiction of the finding at the jurisdictional hearing that the minor violated Penal Code section 71. The minor claims that this later finding means that his statement was not a true threat and, therefore, was protected speech under the First Amendment. (*See Virginia v. Black, supra,* 538 U.S. 343, 359–360 [155 L.Ed.2d 535, 123 S.Ct. 1536] [The First Amendment allows the states to constitutionally proscribe only true threats, which encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals].)

After listening to the minor's argument and the victim's statement at the dispositional hearing, the juvenile court made the following comments: "All right. One thing that I don't believe can be tolerated is having kids on campus threaten teachers. That's just absolutely intolerable. [¶] THE MINOR: (Nods head.) [¶] THE COURT: And I don't think you really wanted to threaten your teacher. I don't think, after you thought about it, that that's something, even after you threatened you would have carried out, but you do need to understand that kind of comment to a teacher is prohibited. You're a student. He's a teacher. You are in a subservient role. You're to do what you're told. You're to follow the rules. You don't go mouthing off to a teacher and threaten to take action against him if he does things that you don't like. He's there to try to help you, and you need help."

We conclude the minor interprets the court's comments too broadly. It is clear from the court's comments at the jurisdictional hearing, as well as at the

outset of the dispositional hearing,[5] that the juvenile court applied the correct law and found the minor had threatened the victim with the improper intent of interfering with his duties as a teacher. The secondary remarks directed to the minor at the dispositional hearing neither negate nor impeach the court's prior findings. (*People v. Cartier* (1960) 54 Cal.2d 300, 312–313 [5 Cal.Rptr. 573, 353 P.2d 53].)

    Furthermore, reading the court's statement as a whole, it appears that the court was merely commenting that it did not believe the minor would have carried out the threat, if given the chance. Penal Code section 71 does not require a finding that the perpetrator actually intends to carry out the threat. It requires only that the perpetrator intend that his threat cause the victim to do or refrain from doing an act in the performance of his or her duties and that it reasonably appears to the *victim* that the threat *could* be carried out. (Pen. Code, § 71; *People v. Hopkins, supra*, 149 Cal.App.3d at pp. 40–41.)

## II

### Denial of Continuance Motion

    The minor finally contends the juvenile court abused its discretion in denying his motion for a continuance of the dispositional hearing to allow his attorney to prepare a motion for reconsideration or new trial. We review the trial court's denial of the motion for a continuance for an abuse of discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 [95 Cal.Rptr.2d 377, 997 P.2d 1044].)

    Welfare and Institutions Code section 682 details the procedure used to continue any hearing relating to proceedings pursuant to section 601 or 602 beyond the required time limit. Written notice is required at least two court days prior, setting forth in an affidavit or declaration specific facts showing good cause for the continuance. If a party moves for a continuance without complying with the requirements, "unless the moving party shows good cause for failure to comply with those requirements, the court shall deny the motion." (Welf. & Inst. Code, § 682, subd. (c).)[6]

---

[5] The juvenile court commented: "The words spoken are clearly threatening. . . . [¶] . . . [¶] . . . I found the comments to be improperly threatening, and I still think they're improperly threatening."

[6] "(a) To continue any hearing relating to proceedings pursuant to Section 601 or 602, . . . beyond the time limit within which the hearing is otherwise required to be heard, a written notice shall be filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing good cause for the continuance. [¶] (b) A continuance shall be granted only upon

In this case, the minor did not file his motion for a continuance "at least two court days before the hearing," as required by Welfare and Institutions Code section 682, subdivision (a). Hence, the trial court was required to deny the motion, unless the minor demonstrated good cause for his failure to comply with the statutory requirements. The minor's attorney declared she "[had] been on vacation until yesterday, January 5, 2004, and [had] not had the opportunity to prepare" the proposed motion for reconsideration. We note, however, that the victim had approached the minor's attorney on the day of the jurisdictional hearing, December 15, 2003, and informed her that he did not believe the minor had been attempting to interfere with his duties. The moving papers do not contain a satisfactory explanation for the three-week delay in filing the motion for continuance until the day before the dispositional hearing. Hence, it does not appear that good cause was demonstrated for the failure to comply with the procedural requirements of section 682, and the trial court was required to deny the motion under section 682, subdivision (c).

Even were we to assume good cause was established, we nevertheless find no abuse of discretion in the denial of the minor's motion for continuance. The burden is on the minor to establish an abuse of judicial discretion. (*People v. Beeler* (1995) 9 Cal.4th 953, 1003 [39 Cal.Rptr.2d 607, 891 P.2d 153].) A continuance may properly be denied when the request is based on allegedly new evidence of speculative value. (*Id.* at p. 1004.)

The minor sought the continuance so that he could file a motion to set aside the jurisdictional finding based on the grounds of newly discovered evidence. (See Welf. & Inst. Code, § 778.) The alleged new evidence was the victim's statement that he did not believe the minor was attempting to interfere with his duties at the exact moment the minor threatened him. Rather, he believed the minor was simply reacting in an angry manner to being yelled at in front of the class. As argued by the Attorney General and conceded by the minor, Lockwood's opinions about the minor's state of mind were not binding on the court. The statute does not require a finding that the victim believed the minor intended to interfere with the victim's duties. It only requires that the trial court determine, based on the evidence presented, that the minor harbored the requisite criminal intent under Penal Code section 71. While the victim's interpretation of events may be admissible, it certainly

---

a showing of good cause and only for that period of time shown to be necessary by the moving party at the hearing on the motion. Neither stipulation of the parties nor convenience of the parties is, in and of itself, good cause. Whenever any continuance is granted, the facts which require the continuance shall be entered into the minutes. [¶] (c) Notwithstanding subdivision (a), a party may make a motion for a continuance without complying with the requirements of that subdivision. However, unless the moving party shows good cause for failure to comply with those requirements, the court shall deny the motion." (Welf. & Inst. Code, § 682.)

is not dispositive of the issue of intent, and it is only one factor for the trial court to consider in its determination of intent. (*See People v. Zendejas, supra,* 196 Cal.App.3d at p. 379 ["[t]he emphasis is not on the subjective belief of the victim; rather, the emphasis is on the intent of the threatener"]; Pen. Code, § 71.)

Furthermore, at the dispositional hearing, after considering Lockwood's declaration, the juvenile court stated that despite the victim's inclination to give the minor the benefit of the doubt, the minor had clearly threatened the teacher and had done so improperly under the statute. The court, in essence, confirmed its finding that the minor's threat was made with the intent to unlawfully influence Lockwood in the performance of his duties. Hence, in addition to concluding that there was no abuse of discretion, we find no prejudice stemming from the denial of the motion to continue.

## DISPOSITION

The jurisdictional order is affirmed.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied January 3, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 2, 2005. George, C. J., did not participate therein.