Filed 1/24/14  P. v. Hurlbert CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GRANT HURLBERT,<br><br>    Defendant and Appellant. | D062575<br><br><br>(Super. Ct. No. SCE312391) |

APPEAL from a judgment of the Superior Court of San Diego County, Herbert L. Exarhos, Judge.  Affirmed as modified.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Grant Hurlbert of four counts: residential burglary, with the enhancing allegation that a person other than an accomplice was present within the residence at the time of the burglary (Pen. Code, §§ 459 & 667.5, subd. (c)(21); count 1); evading police with reckless driving (Veh. Code, § 2800.2, subd. (a); count 2); unlawful taking and driving of a vehicle (Veh. Code, § 10851, subd. (a); count 3); and resisting an officer (Pen. Code, § 148, subd. (a)(1); count 4). The jury also found the enhancements true and found Hurlbert had suffered one prior serious or violent felony conviction within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.2, subds. (a)-(d) & 667, subd. (a)(1)) and served two prison priors (Pen. Code, § 667.5, subd. (b)).[1]

On appeal, Hurlbert contends his conviction on count 1 should be reversed because there was insufficient evidence to support a finding that he intended to commit burglary when he entered the victim's residence. He also contends the trial court erred when it imposed a one-year prior prison term enhancement and a five-year prior serious felony enhancement based on the same prior conviction.

As we explain, we reject Hurlbert's first contention but, as do the People, we agree with his second contention.

---

[1]    All statutory references are to the Penal Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, officers responded to a call reporting a stolen white Mercury Sable. Items left where the car was taken contained fingerprints matching those belonging to Hurlbert.

About a month later, officers responded to a call from a store about a suspicious person in the store who drove away in a white Mercury Sable. The license plate number of the Mercury matched that of the stolen vehicle.

As officers approached the store, they saw a white Mercury exit the parking lot of the store. As the Mercury approached, one of the officers turned his police vehicle into oncoming traffic in an attempt to the stop the car. However, the Mercury drove around the officer's vehicle, veered into the construction area and sped away. At that point, one of the officers saw the driver of the Mercury and identified him as Hurlbert.

Officer's engaged their lights and sirens and chased Hurlbert for approximately one to two minutes until he stopped at a dead end. Hurlbert jumped out of the Mercury and hit the hood of one of the officer's vehicles. One of the officers pulled out his gun, pointed it at Hurlbert and shouted, "Stop or I'll shoot." Hurlbert immediately took off running and hopped a nearby fence. After Hurlbert hopped the fence, one of the officers—before losing sight of him—saw Hurlbert empty his pockets and take off his black shirt and throw it on the ground. Hurlbert encountered and ran from at least two other officers. Officers lost sight of Hurlbert after he ran up the driveway of a nearby residence.

Hurlbert walked onto the back deck of Wayne Tibbetts's residence and attempted to speak with Tibbetts's mother-in-law. However, she did not speak English and motioned for Hurlbert to go inside the house and speak to her daughter. Once inside the residence, Hurlbert spoke to Tibbetts's wife. However, she also did not speak much English and, thus, called for her husband.

When Tibbetts came downstairs, Hurlbert told him, "There's some people outside trying to hurt me." Tibbetts responded, "Who, the police?" Hurlbert did not respond and continued calmly walking through the house. As Hurlbert approached the kitchen door, he turned back and looked over his shoulder at Tibbetts, paused for a few seconds and then exited the house.

Police found Hurlbert a short time later in Tibbetts's yard under a tree and, although he was not wearing a shirt, a blue shirt was lying next to him on the ground. When officers contacted Hurlbert, he said, "Why are you doing this, I'm just . . . laying under a tree in my yard?" and "Why are you messing with me, this is my house . . . check my I.D." Hurlbert also asked the officers, "[W]hat color shirt was the guy wearing that you are looking for, because I have a blue shirt." When officers checked Hurlbert's pockets, they found a wallet with an I.D. that belonged to Tibbetts and a set of car keys.

Approximately 45 minutes after the incident, Tibbetts noticed his wallet and keys that he had left in a basket on the counter by the kitchen door were missing. Tibbetts called the police. The officers responded and showed Tibbetts the T-shirt, wallet and keys found on or near Hurlbert. Tibbetts identified the items as belonging to him.

4

Following a mistrial, the case was retried and the jury found Hurlbert guilty of all charges and found all allegations to be true. The court sentenced Hurlbert to 17 years four months, including five years for the prior serious felony enhancement as well as one year for the prison prior enhancement.

DISCUSSION

I

Burglary Conviction

A. *Guiding Principles*

Hurlbert contends there is insufficient evidence in the record to show he was guilty of first degree burglary because he allegedly did not harbor the requisite intent to commit theft when he entered the Tibbetts' residence.

A defendant commits a burglary "if the defendant enters a residence or other enumerated structure '*with intent* to commit grand or petit larceny or any felony.' (§ 459.)" (*People v. Ramirez* (2006) 39 Cal.4th 398, 463.) A defendant commits first degree burglary if the dwelling is inhabited. (§ 460.) The intent required to commit a burglary must be present at the time of entry. (*People v. Sparks* (2002) 28 Cal.4th 71, 85, fn. 17.) However, intent is rarely demonstrated by direct proof and, as a result, may be inferred from facts and circumstances shown through evidence. (*People v. Holt* (1997) 15 Cal.4th 619, 669.) Whether the entry was accompanied by the requisite intent is a question of fact for the jury. (*People v. Hopkins* (1983) 149 Cal.App.3d 36, 44.)

5

On appeal, we must review the whole record rather than isolated bits of evidence to determine if there is substantial evidence to support the verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 577.) Substantial evidence is evidence that is reasonable, credible and of solid value. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We "neither reweigh the evidence nor reevaluate the credibility of witnesses" in making this determination. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) Instead, we must ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of [burglary] beyond a reasonable doubt.'" (*People v. Marshall* (1997) 15 Cal.4th 1, 34, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) When the facts and circumstances of a particular case and the conduct of the defendant justify a reasonable inference of intent to commit grand or petit theft upon entering the residence, the conviction may not be disturbed on appeal. (*People v. Cain* (1995) 10 Cal.4th 1, 47.)

B. *Analysis*

We conclude the jury's finding that Hurlbert intended to commit a theft when he entered the Tibbetts' residence is amply supported by the evidence in the record. The record shows Hurlbert fled from officers in a stolen vehicle, got out of the vehicle, disobeyed the officer's many requests to stop and continued to flee by jumping a fence. After he jumped the fence, he took his shirt off, emptied his pockets and continued running from officers. This circumstantial evidence supports the inference that Hurlbert was fleeing from police to avoid capture. In an effort to avoid capture, Hurlbert rid

6

himself of many identifying items on his person, including his T-shirt and any items in his pocket, in an attempt to conceal his identity from police.

When police apprehended him, Hurlbert spontaneously shouted, "[W]hat color shirt was the guy wearing that you are looking for, because I have a blue shirt."  Hurlbert told police that he was in his own yard and they should check his I.D. because that would prove he lived at the residence.  Hurlbert tried to convince police he was Tibbetts and not the suspect they were looking for.  This evidence strongly supports the finding that Hurlbert was attempting to change his identity in order to avoid capture and, as relevant to count 1, that he entered the home of Tibbetts with the intent to steal items to conceal his identity and in order to continue to evade capture from the police.

The record reflects that the jury heard this evidence as well as Hurlbert's own testimony that he went to the Tibbetts' residence because he needed water, that Wayne Tibbetts allegedly offered Hurlbert his own shirt and that he did not take or intend to take any items from the residence.  The jury also heard Wayne Tibbetts's testimony in rebuttal that he neither gave Hurlbert his shirt nor permission to take any items—including his keys and wallet—from his residence.

The record shows that the defense presented the jury with its version of events and aggressively argued during closing that Hurlbert lacked the intent to commit burglary when he entered the Tibbetts' residence.  As the fact finder, the jury was entitled to accept Hurlbert's testimony; by the same logic, the jury also was entitled to reject that testimony, as turned out to be the case here.  (See *People v. Smith* (2005) 37 Cal.4th 733, 739 [a

7

court of review is bound to accept the factual and credibility determinations of the trier of fact].) We thus conclude substantial evidence in the record supports the finding of the jury that Hurlbert intended to commit burglary when he entered the Tibbetts' residence.

Furthermore, that Wayne Tibbetts's mother-in-law motioned for Hurlbert to enter the residence does not change our conclusion. The entry required to support a burglary conviction need not constitute a trespass. (*People v. Pendleton* (1979) 25 Cal.3d 371, 382; *People v. Talbot* (1966) 64 Cal.2d 691, 700, overruled on other grounds as stated in *People v. Ireland* (1969) 70 Cal.2d 522, 540.) A person who "enters a room or building with intent to commit larceny is guilty of burglary even though express or implied permission to enter has been given to him [or her] personally or as a member of the public" so long as he or she does not have an unconditional possessory right to enter. (*People v. Deptula* (1962) 58 Cal.2d 225, 228; see also *People v. Barry* (1892) 94 Cal. 481, 483 [defendant was guilty of burglary even though he entered a store through a public entrance during business hours]; *People v. Gauze* (1975) 15 Cal.3d 709, 714 [defendant not guilty of burglarizing his own apartment because defendant had an absolute right to enter even for a felonious purpose].)

Here, the Tibbetts' residence did not belong to Hurlbert and he had no possessory right to enter it. Although Hurlbert claims Wayne Tibbetts's mother-in-law consented to him entering the residence, the record shows she could not speak English and, in any event, Hurlbert entered with the intent to commit larceny and, therefore, he entered

8

without invitation. (*People v. Gauze*, *supra*, 15 Cal.3d at p. 713 ["'a party who enters with the intention to commit a felony enters without an invitation'"].)[2]

II

Multiple Statutory Enhancements Based on a Single Conviction

Relying on our Supreme Court's decision in *People v. Jones* (1993) 5 Cal.4th 1142, Hurlbert contends the trial court erred when it sentenced him to a one-year prior prison term enhancement and a five-year prior serious felony enhancement based on the same prior conviction. The court in *Jones* held that a single prior conviction cannot be the basis of both a prior serious felony enhancement and a prior prison term enhancement. (*Id.* at p. 1150.)

The People submit that the court's imposition of the one-year enhancement should be stricken. (See *People v. Jones*, *supra*, 5 Cal.4th at p. 1150 ["when multiple statutory enhancement provisions are available for the same prior offense . . . the greatest enhancement, but only that one, will apply"].) We agree and thus strike the one-year prior prison term enhancement.

_____

[2]    Although there is substantial evidence in the record to support the finding that Hurlbert intended to take something at the time and/or before he entered the house, assuming arguendo he formed the intent *after* he entered the house, the California Supreme Court has held intent acquired after entering a residence is sufficient to uphold a burglary conviction. (See *People v. Sparks*, *supra*, 28 Cal.4th at p. 73 [entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction even if that intent was formed only after the entry into the house].)

DISPOSITION

The judgment is modified to strike the one-year prior prison term enhancement. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting this modification and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.