Filed 2/14/25  P. v. Hammond CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C100477 |
| Plaintiff and Respondent, | (Super. Ct. No. 23CR1857) |
| v. | |
| MICHAEL CHRISTOPHE HAMMOND, | |
| Defendant and Appellant. | |

A jury found defendant Michael Christophe Hammond guilty of resisting an executive officer.  The trial court sentenced defendant to three years in county jail.  On appeal, defendant argues his conviction violated the First Amendment because the statements he made were not "true threats."  He further argues there is insufficient evidence he had the requisite specific intent.  Finally, he contends he is entitled to one additional day of actual custody credit, which the People concede.  We will modify the judgment to award 270 days of custody credit (135 actual days and 135 conduct days), affirm the judgment as modified, and direct the trial court to amend the abstract of judgment to reflect the judgment as modified.

## I.  BACKGROUND

The information charged defendant with trespass and deterring or preventing an executive officer from performing an official duty by the use of force and violence.  (Pen.

1

Code,[1] §§ 69, 602, subd. (k).)  The information further alleged circumstances in aggravation, including that defendant used a weapon in the crime, had prior convictions as an adult that were numerous and of increasing seriousness, and that he served a prior prison term.  (Cal. Rules of Court, rule 4.421(a), (b).)

The facts at trial are undisputed.  A customer alerted a local gas station manager that a shopping cart was blocking one of the driveways to the station.  The manager went around back, saw the cart, and heard noises from the bushes.  The manager called out and asked the person to move his cart.  The person was angry and responded with abusive language and told the manager, "If I come out, I'll kill you."  The manager was a "little bit" afraid and walked away.  He called the police nonemergency number.

Police Officer Michael Pullmann responded.  When he arrived at the gas station, he approached the defendant and "it escalated from there."  The officer announced his presence and saw the defendant crouched in the bushes.  There were items around defendant, including "a shovel head, [a] large stick, [and] numerous empty alcoholic beverages."  Pullmann told defendant the manager wanted him to leave.

Defendant responded by yelling and screaming at the officer and saying that he was going to kill him.  Defendant was extremely agitated, upset, and angry.  Defendant was crouched down in the bushes about six to eight feet from the officer and holding a two-foot-long stick above his head the officer described as "in the shape of a pickaxe, both of the tops had pointed sides."  The officer felt unsafe, stepped back, and pulled out his Taser.

The officer directed defendant to drop the stick a number of times and to get down.  Eventually, defendant dropped the stick but started screaming and yelling again and this time he picked up the head of a flathead shovel.  Again, he shouted he was going to kill the officer.  His demeanor was angry, agitated, and irrational.  The officer testified

---

[1] Further undesignated statutory references are to the Penal Code.

he believed the defendant could have closed the gap between the officer and himself in a second or two and could have caused him great bodily injury with the shovel head or the stick. Ultimately, defendant did not do so.

When the officer's partner arrived, defendant dropped the shovel to grab his boots, and at that time, the officers were able to take him into custody. While he was in the patrol car, defendant stated he was going to kill the officer and every other cop in the city. The entire incident took between 10 to 15 minutes. During closing argument, the prosecutor focused on defendant's repeated shouting "I'm going to kill you" as he held the pickaxe stick and the shovel head as the threats of use of force or violence.

The jury acquitted defendant of trespassing but found him guilty of resisting an executive officer in violation of section 69. Defendant waived a jury trial on the aggravating factors. The trial court found defendant used a weapon in the crime. It also found defendant had served a prior prison term and was on parole when he committed the crime. Finally, it found not true that defendant had numerous convictions of increasing seriousness.

The trial court sentenced defendant to three years to be served in county jail.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant argues his conviction violates the First Amendment because his words did not constitute a "true threat."[2] We disagree.

*Alleged Violation of First Amendment*

Section 69 provides "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon

---

[2] While defendant did not raise this argument at trial, we may and do exercise our discretion to review this constitutional issue. (*People v. Vera* (1997) 15 Cal.4th 269, 276-277.)

3

the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable" by a fine or imprisonment.

"Where, as here, physical violence does not accompany the threat, we must be mindful of the risk of punishing First Amendment speech. . . . But where speech strays from 'the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the state has greater latitude to regulate expression.' [Citation.] The state may thus punish threats falling outside the purview of the First Amendment, even if the threat is pure speech. [Citation.] To avoid the risk of punishing protected First Amendment speech, the 'threat' section 69 refers to is therefore a threat of unlawful violence in an attempt to deter the officer." (*People v. Iboa* (2012) 207 Cal.App.4th 111, 118.)

Accordingly, a conviction under section 69 based on threatening speech is unconstitutional if the speech was not a true threat. (*People v. Smolkin* (2020) 49 Cal.App.5th 183, 188.) True threats are " 'those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " (*Smolkin*, at p. 188.) The test to be applied is whether "a reasonable listener would understand, in light of the context and surrounding circumstances," that the threat constitutes " 'a serious expression of an intent to commit an act of unlawful violence' [citation], rather than an expression of jest or frustration." (*Ibid.*) We undertake an independent examination of the record to determine whether the speech being punished is a true threat. (*Ibid.*)

Defendant argues his language and actions did not constitute a true threat because he was delusional and his threats must be understood in the context of his irrational, agitated, and angry mental state. He points to empty alcohol bottles and suggests that because the gas station manager walked away following his encounter with defendant and called the police nonemergency telephone number, and the fact that defendant did not pursue him, as evidence his statements to the officer were not true threats.

4

In support of his argument, defendant cites to *Smolkin*. In that case, the defendant wrote a letter to the district attorney's office asserting that if charges were not dropped, the entire office would be arrested by "Russian military police, tried in a rubber stamp trial for kidnapping and sentenced to death by firing squad." (*People v. Smolkin*, *supra*, 49 Cal.App.4th at pp. 185-186.) The Court of Appeal declined to find this rambling letter was a true threat because defendant's threats were delusional, he threatened violence by third parties who were not his associates (except in his delusions), and repeatedly assured the recipient he was not threatening to personally commit violence. (*Id.* at p. 189.)

Defendant's conduct does not resemble the facts of *Smolkin*. Unlike in *Smolkin*, defendant made his threats to kill Officer Pullmann directly, loudly, angrily and in person. He did so in close proximity to the officer rather than in a letter containing disclaimers. The officer felt unsafe enough to back up and draw his Taser and was concerned defendant could inflict great bodily injury upon him. Further, defendant made the statements while holding weapons: a pickaxe-like stick with points on both ends and a shovel head. In this context and under the surrounding circumstances, a reasonable listener would understand these words as true threats. (See *People v. Iboa*, *supra*, 207 Cal.App.4th at p. 120 [defendant's conduct of making vague and threatening comments to firefighters, swearing at them, telling them to get off his property, confronting the fire captain, showing his gang tattoos and clenched fists, constituted the type of threat of unlawful violence § 69 prohibits].)

There is no evidence in the record to support defendant's claim that the statements he made to Officer Pullmann were made as a result of delusions, were made in jest, or as a result of frustration. Even though there were empty bottles nearby defendant, there is no evidence defendant drank alcohol from the empty bottles or was intoxicated at the time he spoke to the officer. Finally, the gas station manager's response after being threatened by defendant was to immediately leave the area and call the police for help.

5

His actions are further evidence that a reasonable person would consider defendant's statements to be true threats.

Based on the record, we conclude a reasonable listener would have understood defendant's repeated loud and angry statements that he would kill the responding officer while holding two weapons were true threats—not an expression of jest or frustration—and thus defendant's first amendment rights were not violated.

*Evidence of Specific Intent to Interfere with Officer's Duties*

Defendant next argues there is insufficient evidence to support the finding he had the requisite specific intent to interfere with Officer Pullmann's duties. Defendant again bases this argument on the contention he was delusional. Again, we disagree.

In reviewing a challenge to the sufficiency of the evidence, our "task is to determine whether, in light of the whole record viewed in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1624.) We " ' "must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) We " 'must accept logical inferences that the [trier of fact] might have drawn from the evidence even if [we] would have concluded otherwise.' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.) " ' "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

The prosecution was required to prove defendant had "a specific intent to interfere with the executive officer's performance of his duties." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1153.) (CALCRIM No. 2651.) "Intent is rarely susceptible of direct proof. Therefore, in determining whether the element of intent has been established, we consider whether it may be inferred from all the facts and circumstances disclosed by the evidence." (*In re Ernesto H.* (2004) 125 Cal.App.4th 298, 313.)

Due to defendant's alleged delusional mental state, defendant theorizes there is insufficient evidence that he intended to use threats to deter Officer Pullmann from performing a duty imposed by law. He contends he "did not use any physical force or violence against [the officer] beyond holding a stick and a shovel head, but he also held his boots." He argues that he complied with the officer's commands to drop the stick and did not lunge forward although he repeated that he was going to kill the officer. He also points to the fact that he did not stop the officer from investigating the gas station manager's phone call but instead just responded irrationally. Defendant did not testify, nor did he or the prosecution present any evidence that defendant was delusional such as through expert witness testimony. (*In re Ernesto H.*, *supra*, 125 Cal.App.4th at p. 313.) We conclude nothing about these facts compelled the trier of fact to conclude defendant lacked the specific intent to prevent or deter an executive officer from performing the officer's lawful duty.

Rather, defendant threatened to kill the officer when the officer merely identified himself and told defendant the manager of the store wanted him to leave. Defendant did so while holding a weapon. He repeated this cycle while holding a second weapon. A reasonable inference from these words and actions is that defendant had the requisite intent to deter this officer from his duty of investigating defendant's potential trespass on the property. Thus, we conclude substantial evidence supports the jury's verdict.

*Additional Custody Credit*

Finally, defendant correctly points out the trial court failed to give him credit for 135 days in custody for the time he spent in custody between September 28, 2023, and February 9, 2024, but instead credited him with 134 days. The People concede this error and agree defendant should be given 135 days of actual credit and 135 days of good time credit for a total presentence custody credit of 270 days. We accept the People's concession.

## III. DISPOSITION

The judgment is ordered modified to include 270 days of custody credit (135 actual days and 135 conduct days). The judgment is affirmed as modified. The trial court shall forward a certified copy of the amended abstract of judgment to the El Dorado County Sheriff.

/s/
WISEMAN, J.*

We concur:

/s/
ROBIE, Acting P. J.

/s/
MAURO, J.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8